Michael D. SIZEMORE,
Plaintiff-Appellant,

v.

Jerry WILLIFORD, et al.,
Defendants-Appellees.

No. 85–3243.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1987.

Decided Sept. 14, 1987.

---

Robert E. Shapiro, Barack, Ferrazzano, Kirschbaum & Perman, Chicago, Ill., for plaintiff-appellant.

Laura J. Jones, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for defendants-appellees.

Before WOOD, CUDAHY, and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant, Michael Sizemore, appeals from the district court's dismissal of his suit against various officials and officers at the federal prison in Marion, Illinois. Sizemore, an inmate at Marion, alleges that defendants violated his First and Fourteenth Amendment rights by arbitrarily denying him access to certain published materials. We reverse and remand for further proceedings.

## I.

While incarcerated at Marion, Sizemore has subscribed to a variety of publications, including sports and entertainment periodicals and at least one daily newspaper. Sizemore receives some of these publications directly at Marion and others are forwarded to him by his brother. Sizemore alleges that, as early as 1984, defendants commenced their interference with his regular and timely receipt of the above-described periodicals. Specifically, defendants are charged with consistently delivering Sizemore's copies of the *Cincinnati Enquirer* days late, in groups of three or more and seldom in sequential order. At other times, Sizemore alleges that he receives only two or three copies of the *Enquirer* per week and often receives no newspaper at all. A similar pattern of interference with Sizemore's receipt of magazines, whether obtained directly from the publisher or in packages forwarded by his family, is alleged. Sizemore's complaint charges corrections officers with withholding his publications for their own perusal. At any rate, despite several verbal and written complaints to Marion employees concerning these incidents, including a written request for administrative action to Marion's warden, the sporadic and interrupted delivery of Sizemore's newspapers and other reading materials continued unabated.

Rather than continue pursuing administrative redress, Sizemore filed a *pro se* complaint in the district court which the court, in turn, assigned to a magistrate. The magistrate initially denied Sizemore's request for the appointment of counsel and subsequently granted defendants' motion to dismiss. In his two-page report and recommendation, the magistrate construed Sizemore's suit as one for a tortious deprivation of property for which an adequate post-deprivation remedy existed and, accordingly, under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), concluded that Sizemore's allegations failed to state a due process violation. In timely objecting to the magistrate's report, Sizemore claimed, *inter alia*, that the magistrate "failed to consider the allegations in [his] ... complaint" and that *Parratt* involved negligent deprivations of property not intentional deprivations as were alleged by his cause of action. The district court addressed what it felt was Sizemore's "main objection" to the magistrate's report, that *Parratt* did not speak to intentional torts, by reference to *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (due process afforded by state post-deprivation remedies even in case of intentional tort), and then similarly concluded that Sizemore's claim did not constitute a due process violation. The magistrate's report was adopted on December 13, 1985 and the case dismissed.

## II.

On appeal, Sizemore, now represented by appointed counsel, claims that the district court erred in failing to construe his complaint as alleging substantive constitutional violations. Specifically, Sizemore asserts that if liberally construed in accordance with the Supreme Court's decision in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per cu-

riam), his *pro se* complaint set forth sufficient facts to state a claim under the First and Fourteenth Amendments and, therefore, dismissal of his suit upon a motion to dismiss was improper. In *Haines,* the Supreme Court held that *pro se* complaints should be held to less stringent standards than pleadings drafted by lawyers. That *pro se* complaints are generally to be liberally construed has been and continues to be the well-settled law of this circuit. *See Caldwell v. Miller,* 790 F.2d 589, 595–96 (7th Cir.1986). Thus, our primary inquiry in this case centers on the question whether the district court erred by narrowly considering Sizemore's complaint as nothing more than a procedural due process claim instead of also as a claim alleging substantive violations of the First and Fourteenth Amendments.

■ In attempting to determine whether the district court acted prematurely in dismissing Sizemore's suit for failure to state a claim, we must first consider whether Sizemore's allegations, in fact, implicate any of his constitutional rights. With respect to the First Amendment rights of prisoners, the Supreme Court has held, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Moreover, this circuit has held that in the absence of restrictions premised upon the legitimate goals and objectives of institutional confinement, prison inmates retain their First Amendment right to receive and to read newspapers and periodicals. *See Kincaid v. Rush,* 670 F.2d 737, 744–45 (7th Cir.1982). When viewed in this context, we are satisfied that, for purposes of overcoming a motion to dismiss for failure to state a claim, Sizemore's complaint, to the extent that he alleges that copies of his *Cincinnati Enquirer* were *perma-*

*nently* withheld and intentionally *never* delivered by defendants, does implicate his substantive rights as guaranteed by the First Amendment. We are not here dealing with allegations that prison officials negligently misplaced a hobby kit, *see, e.g., Parratt,* or wrongfully confiscated a copy of *War and Peace;* instead, Sizemore's complaint alleges that his right to receive news and information from a privately obtained source has been seriously abridged without corresponding justification by defendants.[1]

■ In holding as we do, we want to emphasize that merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment. Defendants caution in their brief that if the district court's dismissal of Sizemore's complaint is reversed, courts will be inundated with prisoner suits each time a newspaper or magazine addressed to an inmate is interfered with prior to delivery. While we are fully cognizant of the danger that prisoners will increasingly look to this and other federal courts to act as prison postmasters general, we cannot simply disregard Sizemore's allegations, the truth of which must be presumed, which charge that defendants repeatedly and intentionally withheld otherwise unobjectionable reading material from ever reaching him. Allegations of a continuing pattern of disregard for a prisoner's First Amendment right to read and to receive all but the most inflammatory and provocative publications (in addition to publications withheld as punishment after due process) are substantially, and we think constitutionally, different from lawsuits alleging First Amendment violations on the basis of isolated instances of loss or theft of an inmate's reading materials. In the event that future prisoner suits attempt to ex-

1. We need not, at this stage of the proceedings, accept the government's invitation to address the actual liability with which each defendant is charged inasmuch as Sizemore appeals only from the dismissal of his lawsuit for failure to state a cognizable constitutional claim. Evalua-tion of the culpability of the various defendants is most appropriately conducted in response to specific motions to dismiss or upon a motion for summary judgment as to a particular defendant.

ploit our narrow holding in this case, district courts possess in their procedural arsenals both the ability to dismiss lawsuits and to grant summary judgment against those whose allegations do not, upon inspection, rise to the level of constitutional magnitude articulated here as well as the authority to direct plaintiffs with constitutionally insignificant suits to proceed instead under the Federal Tort Claims Act, 28 U.S.C. § 1346.

In attempting to support the decision below, defendants assert that the district court's dismissal of Sizemore's suit was appropriate on three grounds: (i) the Federal Tort Claims Act provides an adequate remedy for the loss of an inmate's property; (ii) delays in the delivery of prison mail do not give rise to a constitutional violation; and (iii) Sizemore's failure to specifically raise his constitutional arguments before the district court renders such claims waived on appeal. Taking these arguments in reverse order, the claim that Sizemore failed to properly raise a First Amendment claim in the district court is not only disingenuous but it begs the very question presently before this court. Sizemore's *pro se* status and the substantially straightforward (if not perfectly pleaded) nature of his allegations should not now preclude his pressing a First Amendment argument on appeal, especially as it was the district court's narrow interpretation of the complaint that resulted in its being viewed initially as something other than a substantive constitutional claim.

■ Defendants next argue that even if Sizemore's allegations of delay in the delivery of his reading materials are accepted as true, such delays simply do not rise to the level of a constitutional violation. As we stated previously, were Sizemore alleging no more than persistent delays in the receipt of or the occasional loss or theft of

his subscriptions, the context of his confinement would excuse such relatively short-term subscription interruptions. However, the allegation that upon repeated occasions copies of the *Cincinnati Enquirer* were intentionally *never* delivered to Sizemore does, absent any security-related or other legitimate justification, state a claim under the First Amendment.[2] *See Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804; *Kincaid,* 670 F.2d at 744–45.

■ Finally, defendants argue that the existence of an adequate post-deprivation remedy for the loss or destruction of Sizemore's reading materials—i.e., the Federal Tort Claims Act—precludes Sizemore from seeking judicial redress. While we express no opinion on the district court's holding that the Supreme Court's decisions in *Parratt v. Taylor* and *Hudson v. Palmer* would otherwise have been dispositive of Sizemore's claim that he had been deprived of his property without due process, nothing in either decision precludes claims predicated on conduct giving rise to a deprivation of property which conduct also implicates other constitutional rights. As this court stated in *Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983), "*Parratt* is thus not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process." *Id.* at 872. Thus, despite the government's contrary assertions, the separate and independent existence of Sizemore's First Amendment claim is in no way affected, let alone precluded, by the availability of alternate procedural remedies fully adequate to afford Sizemore due process of law for a deprivation of personal property.

### III.

In conclusion, we hold that Sizemore's *pro se* complaint, liberally construed, alleg-

---

2. At oral argument, the court inquired of counsel for the government what sort of "interruption" of Sizemore's reading materials would it take to give rise to a First Amendment claim. The government's position was that no delay in the receipt of such materials could constitute a First Amendment violation but that if Sizemore's subscriptions were *entirely* cut off he

would be able to state a claim under the First Amendment. Sizemore's complaint, despite the government's repeated assertions to the contrary, contains an allegation that from time to time, as well as for extended periods of time, he *never* received his subscription to the *Cincinnati Enquirer.*

es facts sufficient to state a claim under the First Amendment. Accordingly, we remand the case for further proceedings including leave to Sizemore to amend his original complaint prior to any further proceedings.[3] Of course, we express no views on the merits of the underlying dispute. The decision of the district court is

REVERSED AND REMANDED.

---

3. The district court dismissed Sizemore's complaint without reference to an equal protection claim and thus we need not reach the issue on this appeal. Amendment by Sizemore of his complaint, as provided for above, should put squarely before the district court the issues to be resolved upon remand.