In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2163

WILLIAM K. ZIMMERMAN,

Plaintiff-Appellant,

v.

MARGARITA TRIBBLE, CRAIG HANKS
and EDWARD L. COHN,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 97 C 1778--David F. Hamilton, Judge.


Argued June 1, 2000--Decided August 16, 2000


Before Bauer, Easterbrook and Manion, Circuit Judges.

Bauer, Circuit Judge.  William K. Zimmerman complains about the conditions at the Wabash Valley Correctional Center. In a pro se civil rights action against Indiana prison officials, he alleges violations of his First, Sixth, Eighth, and Fourteenth Amendment rights. The District Court, pursuant to the Prison Litigation Reform Act of 1996, dismissed Zimmerman's second amended complaint, finding that it failed to state a claim upon which relief could be granted. Zimmerman appeals. We affirm in part and reverse in part.

I.  BACKGROUND

Over his protests and appeals, on July 9, 1997, William Zimmerman was transferred from the Pendleton Correctional Facility to the Wabash Valley Correctional Facility. He was upset over the transfer because, at Pendleton, he was able to, and did, participate in vocational training and substance abuse programs. Had he successfully completed those programs Zimmerman would have earned good time credits and, perhaps, an early release from prison. Those programs are not offered at Wabash Valley and he believes that the loss of the opportunity to earn good time credits violates his Fourteenth Amendment right to due

process.

Immediately upon his arrival at Wabash Valley, Zimmerman found that not only was he not going to get to participate in programs that could gain his early release, he also was not going to get as much time in the library as he desired. Zimmerman was representing himself in a felony criminal trial and had a firm trial date of August 4, 1997. He notified Margarita Tribble, the law library supervisor, of his pro se status and approaching trial date and requested access to the law library to prepare for the trial. Zimmerman claims that Tribble denied him access./1 As a result, he says he was forced to relinquish his pro se status and accept a court-appointed lawyer. After he complained about Tribble's conduct and filed official grievances within the prison system, Tribble supposedly refused to give him any time in the law library. Styling this as retaliation for his complaints about her, Zimmerman alleges that Tribble (and the other defendants who oversee Tribble) violated his First Amendment rights.

Adding to his woes, some of the mail that Zimmerman's fiancee sent to him was delayed in reaching him, deliberately, he claims. His fiancee acted as his "certified agent" in helping him prepare for trial. She gathered evidence and other documents and mailed them to him in envelopes marked "legal mail." On one occasion, according to the Complaint, an envelope was mailed by his fiancee on November 7, 1997, but was not received by him until December 1, 1997. He claims this delay forced him to file a pleading without the benefit of those documents and, as a result, his pleading was summarily denied. He argues that this delay in the delivery of his mail violates his First Amendment rights.

Zimmerman sued Tribble, Craig Hanks (the Superintendent at Wabash Valley), and Edward Cohn (the Indiana Department of Corrections Commissioner), claiming that while acting under color of state law each one violated his constitutional rights, giving rise to a cause of action under 42 U.S.C. sec.1983. The District Court dismissed his claims under the Prison Litigation Reform Act of 1996. 28 U.S.C. sec.1915A. That statute requires the court to screen the civil complaints of all prisoners who sue a government entity, officer, or employee and requires the court to dismiss any complaint that is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. sec.1915A(b). The District Court found that Zimmerman's Second Amended Complaint did not state a claim for

relief.

II. DISCUSSION

Our review of a sec.1915A dismissal for failure to state a claim upon which relief may be granted is plenary. Sanders v. Sheahan, 198 F.3d 626 (7th Cir. 1999). We review under the same de novo standard as if it were an ordinary dismissal under Rule 12(b)(6), taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff. Id. See also Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997). We will affirm the District Court's dismissal only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Casteel v. Pieschek, 3 F.3d 1050, 1056 (7th Cir. 1993).

A. Transfer To Wabash Valley Correctional Facility

Zimmerman wants to participate in vocational training and substance abuse programs, knowing that if he does and successfully completes the programs he earns good time credits. At Pendleton, he was participating in those programs. At Wabash Valley, he is not, because the programs are not offered. He thus protests his transfer, arguing that because he is now unable to participate in educational and rehabilitative programs, the transfer deprived him of a liberty interest.

"There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Although the Constitution guarantees no right to credit time for good behavior or educational programs, the State may create such a liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Zimmerman argues that Indiana has done just that, created a liberty interest under Indiana Code sec.35-50-6-3.3, which grants an inmate credit time for successfully completing various educational programs. We have already reviewed and rejected this identical claim.

In Higgason v. Farley, 83 F.3d 807, 809 (7th Cir. 1996), we held that the denial of access to educational programs does not infringe on a protected liberty interest. The plaintiff, like Zimmerman, claimed a liberty interest under Indiana Code sec.35-50-6-3.3. Relying on Supreme Court precedent, we soundly rejected that position. If "the State's action will inevitably

affect the duration of the sentence, there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence." Id., citing Sandin v. Conner, 515 U.S. 472, 487 (1995) (internal quotation marks omitted). We concluded that even if Higgason had been given the opportunity, "it was not inevitable that he would complete an educational program and earn good time credits." Id. Thus, we found there was no due process violation.

Higgason is a case that is on all fours with the case before us. We believe it is controlling and mandates that Zimmerman's claim be dismissed. Zimmerman, however, suggests that a different result is necessary because he alleged in his Second Amended Complaint that he "would" receive good time credits if allowed to participate in an educational program. He wishes that the use of the word "would" would transform his case from one of uncertainty to one of certainty, thus taking him out of the ambit of Higgason. We do not think so. As we found in Higgason, the successful completion of a program is not inevitable. Thus, denying him the opportunity to earn good time credits does not "inevitably affect the duration of the sentence," and does not deprive him of constitutional guarantees. The fact that he pleaded that he "would" have received credit time is merely a legal conclusion devoid of supporting factual allegations and does withstand a motion to dismiss. Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985).

Recently, in an analogous situation, we reaffirmed the principles underlying Higgason. In Stanley v. Litscher, 213 F.3d 340 (7th Cir. 2000), we analyzed a prisoner's right to participate in a program for sex offenders and similarly concluded that there was no liberty interest in the participation of such programs. The plaintiff, a psychopath, desired to participate in a program, believing that it would "give him a boost when seeking parole or work release and reduce the chance that he will be civilly committed at the end of his criminal sentence." Id. at 342. We rejected his constitutional claims, holding that admission to the program was not a liberty interest. "No fixed set of criteria entitles anyone to admission, and exclusion leaves the prisoner with the normal attributes of confinement." Id. (citations omitted).

As the District Court noted, "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468 (1983). There is nothing in his Second

Amended Complaint that suggests that Zimmerman is deprived of the basic human needs to which he is entitled. He complains only of the deprivation of the opportunity to earn good time credits. Such a deprivation is not a constitutional violation. The District Court therefore correctly dismissed his claim for violation of the Due Process Clause of the Fourteenth Amendment.

### B. Untimely Delivery of Mail

Zimmerman complains that Wabash Valley is also violating his First Amendment rights by delivering his mail in an untimely manner. The free-speech clause of the First Amendment applies to communications between an inmate and an outsider, Martin v. Brewer, 830 F.2d 76, 77 (7th Cir. 1987), and if Zimmerman alleges a continuing pattern or repeated occurrences of such conduct he has a valid claim for a First Amendment violation. Sizemore v. Williford, 829 F.2d 608, 609 (7th Cir. 1987). The allegations in his Second Amended Complaint, however, do not measure up to that standard and we therefore find that he has failed to state a claim upon which relief can be granted and affirm the District Court's dismissal of this claim.

Zimmerman details in his Second Amended Complaint only one instance in which his mail was delayed. He claims that on November 7, 1997, his fiancee sent an envelope to him that was not received by him until December 1, 1997./2 Accepting this allegation as true, as we must for purposes of our review, the most that Zimmerman alleges is an isolated incident of mail that was untimely delivered. His attempt to bolster that allegation with an assertion that there was a "routine practice of not processing incoming offender mail in a timely manner," without any supporting factual allegations, is simply is not enough. Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment. See e.g., Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999); Sizemore, 829 F.2d at 610. Zimmerman's claim, then, was properly dismissed.

### C. Retaliatory Denial Of Access To The Law Library

Invoking the First Amendment, Zimmerman contends that Tribble retaliated against him for complaining about his lack of access to the law library. Prisoners have a right of access to the courts to give them a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). Such access must

be "adequate, effective and meaningful." Id. at 822. Zimmerman did not, as the District Court correctly concluded, state a claim for denial of access to the library. But, otherwise permissible conduct can become impermissible when done for retaliatory reasons. Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988) (otherwise constitutional procedures of prison disciplinary committee could be invalidated by allegation of retaliation); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987) (district court reversed for dismissing complaint challenging otherwise permissible prison transfer because of sufficient allegation of retaliation). We express no opinion as to its ultimate result, but we believe that Zimmerman can state a claim for retaliation against Tribble and, therefore, reverse and remand that count for further proceedings.

A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." Cain, 857 F.2d at n.6. Here, Zimmerman alleges that upon his arrival at Wabash Valley, he notified Tribble, the law library supervisor, of his pro se status and firm trial date of August 4, 1997. Tribble "repeatedly" denied him access to the library facilities, causing Zimmerman to become upset and file prison grievances against her. After those grievances were filed, Tribble retaliated by denying Zimmerman access to the law library. This is the chronology alleged by Zimmerman. Although we would wish for more detail,/3 we find that the chronology alleges the bare minimum necessary to survive a dismissal under sec.1915A.

In Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996), the plaintiff alleged that the defendant's action in delaying the plaintiff's transfer to another prison was "in retaliation for plaintiff's use of the 'inmate grievance system' and previous lawsuits against B.O.P. officials." We held this to be sufficient to survive a motion for summary judgment. We believed that summary judgment was inappropriate based upon the record because "[i]f believed, the claim that McDaniel prevented an expeditious transfer in order to retaliate against Babcock for exercising his constitutional rights would entitle Babcock to damages." Id. at 275.

Zimmerman's Second Amended Complaint does not merely assert the "legal conclusion" of retaliation, as the District Court here suggested. The complaint states enough factual allegations to arguably present a colorable claim of retaliation and it alleges that the exercise of his right was closely followed by the retaliatory act. See Harris v. Fleming, 839 F.2d

1232, 1238 (7th Cir. 1988) (District Court may appropriately consider timing between protected action and alleged retaliatory act). Given this, we reverse the judgment of the District Court dismissing Zimmerman's claim for retaliation against Tribble and remand it to the District Court for further proceedings consistent with this opinion.


   D.  Claims Against Hanks and Cohn

   Zimmerman also alleges claims against Hanks and Cohn. These claims are predicted upon the doctrine of respondeat superior. However, sec.1983 does not allow actions against individuals merely for their supervisory role of others. "An individual cannot be held liable in a sec.1983 action unless he caused or participated in [the] alleged constitutional deprivation." Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), quoting Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). Although Zimmerman alleges that Hanks and Cohn oversaw others or established wrongful policies, there are no allegations that either of them was personally involved in the constitutional wrongdoing. Therefore, the claims against them were properly dismissed. Rowe, 196 F.3d at n2.

III.  CONCLUSION

   For the foregoing reasons, the judgment of the District Court is affirmed in part and reversed and remanded in part.

AFFIRMED IN PART AND
REVERSED AND REMANDED IN PART.


/1 His Second Amended Complaint alleges that he was denied access. However, during oral argument, his allegation was changed to limited access.

/2 Zimmerman attempts to portray the envelope as "legal mail" because it contained documents intended for use at his criminal trial. He mistakenly believes that if he labels his fiancee as his "certified agent" that will garner the envelope protected legal status. He is wrong. Merely labeling his fiancee his "certified agent" does not create a privilege akin to the attorney-client privilege. We hold that no privilege exists for the envelope and refuse to consider Zimmerman's allegation that the opening of this document resulted in further constitutional violations.

/3 More detail was provided at oral argument. Counsel for Zimmerman explained that Zimmerman

was originally given three hours per week in the library. However, once he complained about Tribble's refusal to grant him all of the time he desired, she cut his library time down to zero hours, totally denying him access.