**David Paul HAMMER, Plaintiff–Appellant,**

v.

**John D. ASHCROFT, Attorney General of the United States, et al., Defendants–Appellees.**

No. 01–2898.

United States Court of Appeals, Seventh Circuit.

Submitted July 24, 2002.*

Decided July 25, 2002.

Before BAUER, RIPPLE, MANION, Circuit Judges.

**ORDER**

Federal death-row inmate David Paul Hammer brought this lawsuit under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that the defendants violated his First Amendment rights by denying and restricting his access to the news media. The defendants are Attorney General John D. Ashcroft, Warden Harley G. Lappin, and Federal Bureau of Prisons Director Kathleen Hawk–Sawyer. The district court screened the complaint under the Prison Litigation Reform Act, 28 U.S.C.

---

* Appellees notified this court that they were never served with process in the district court and would not be participating in this appeal, which has been submitted without a brief from them. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R.App. P. 34(a)(2).

§ 1915A(b)(1), and dismissed it for failure to state a claim. Mr. Hammer appeals, and, for the reasons explained below, we reverse and remand.

Mr. Hammer is incarcerated in the Federal Death Row Unit at the United States Penitentiary in Terre Haute, Indiana. In April 2001 Mr. Hammer filed this lawsuit, alleging that since March 2000 the defendants have unconstitutionally infringed on his right to freedom of speech by denying and restricting his access to the news media based on the content of his message and his status as a federal death-row inmate. In his complaint, Mr. Hammer alleged that between March 2000 and April 2001 a number of news organizations wished to conduct face-to-face or video-conference interviews with him, but that Warden Lappin denied every one of his requests to participate in the interviews. In addition, Mr. Hammer alleged that the Warden Lappin unconstitutionally restricted his ability to communicate with the media via telephone or mail correspondence.

According to Mr. Hammer, these restrictions limiting his access to the media are part of the defendants' deliberate plan to deny him a public forum and are in response to "public outcry" over a television interview conducted in March 2000 of federal death-row inmate Timothy McVeigh. Mr. Hammer further alleged that the reasons prison officials provided for restricting his speech and denying his requests—namely, safety and privacy concerns—are not the real reasons they are restricting his speech. He contended that the prison's purported reasons are a "guise." He claimed that prison officials are restricting his speech because he is a death-row inmate and they want to prevent his views from being publicized. In particular, he alleged, they seek to suppress his views about capital punishment and his experience on federal death row. Mr. Hammer also alleged that before March 2000 he was allowed to participate in a number of interviews without causing any disruptions or prompting safety concerns.

In May 2001 the district court dismissed Mr. Hammer's complaint under § 1915A for failure to state a claim. The district court concluded that Mr. Hammer failed to state a claim because he had no constitutional right to face-to-face interviews, and because the restrictions on his access to the media served legitimate penological interests of safety, privacy, and order.

We review de novo a district court's dismissal under § 1915A for failure to state a claim. *Wynn v. Southward,* 251 F.3d 588, 591 (7th Cir.2001). We apply the same standard as for dismissals under Rule 12(b)(6): we take all well-pleaded allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Id.* at 592; *Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir.2000). A complaint fails to state a claim only if relief could not be granted under any set of facts consistent with the allegations. *Wynn,* 251 F.3d at 592.

Inmates retain First Amendment rights that are consistent with incarceration, and prison restrictions limiting or interfering with those rights must reasonably relate to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir.1999). While inmates' free-speech rights include access to the media, inmates do not have a right to face-to-face interviews so long as other avenues of communication are open to them, and regulations denying face-to-face interviews are applied in a neutral, equal manner without regard to content. *See Pell v. Procunier,* 417 U.S. 817, 827–28, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Prison

officials are given deference in establishing regulations and in determining appropriate restrictions, and we will not second-guess regulations or practices that serve legitimate penological interests. *Turner*, 482 U.S. at 89.

The Supreme Court has delineated four factors for determining whether a specific regulation or practice serves a legitimate penological interest. *Id.* at 89–90. The primary factor is whether a valid, rational connection exists between the restriction and a legitimate interest. *Id.* A restriction on speech that fails to meet this connection fails under *Turner. See Shaw v. Murphy*, 532 U.S. 223, 229–30, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). Relevant to this factor is whether the restriction on speech is applied in a neutral manner without regard to content and is applied equally among inmates. *Turner*, 482 U.S. at 90; *Rowe*, 196 F.3d at 782; *Abu–Jamal v. Price*, 154 F.3d 128, 134 (3d Cir.1998). The other factors relevant in determining a restriction's reasonableness include whether the inmate has alternative means of exercising the right; the impact accommodation of the asserted right would have on guards, other inmates, and prison resources; and the absence of a reasonable alternative to the regulation or practice. *Turner*, 482 U.S. at 90.

Given these standards, Mr. Hammer's complaint stated a claim. In regard to whether the restrictions on his speech have a valid, rational connection to a legitimate interest, Mr. Hammer specifically alleged that the defendants are restricting his speech based on his status as a death-row inmate and to suppress his views, and, despite their assertions to the contrary, not to serve legitimate interests. In addition, he alleged that the prison is not applying the restrictions in a neutral fashion, but is instead using the guise of unspecified security concerns to restrict his speech based on status and content. In regard to whether alternative avenues are open to him, Mr. Hammer alleged that the prison not only restricts his access to face-to-face interviews, but also unconstitutionally restricts his access via telephone and mail correspondence. He also alleged that the prison is already equipped for video-conferencing and that this would provide a readily available alternative to face-to-face interviews. In regard to the impact that accommodating his rights would have on the prison, Mr Hammer alleged that prior to March 2000 he participated in a number of interviews and that these interviews did not create any disruptions or security concerns. Finally, Mr. Hammer also alleged that the prison's practice of ordering him, under threat of reprimand, not to mention any other inmate in any type of communication with the media does not conform to the Bureau of Prison's own regulations.[1] These allegations state a claim. *See Turner*, 482 U.S. at 89–90; *Abu–Jamal*, 154 F.3d at 134 (prison's restrictions directed at content of inmate's writings and in response to public pressure not valid under *Turner*); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir.1996) (inmate's

1. On this point, Mr. Hammer alleged that the restrictions the prison placed on him were broader than those provided for in the regulations. Mr. Hammer alleged that in ordering him not to mention any other inmate in his communications with the media, Warden Lappin maintained that the restriction was warranted by Bureau of Prisons Regulation 28 C.F.R. § 540.61(d). The district court also relied on this regulation to conclude that the restrictions placed on Mr. Hammer's speech were warranted. On appeal, Mr. Hammer correctly points out that § 540.61(d) states that, "the news media may not obtain and use personal information from one inmate about another inmate who refuses to be interviewed;" whereas, he alleged that he was ordered not to mention any other inmate under any circumstances, regardless of whether or not the inmate refused to be interviewed.

allegations stated a first amendment claim, and "[a]t this early stage in the litigation, we cannot determine, of course, whether the defendants may be able to justify" their conduct); *Shimer v. Washington,* 100 F.3d 506, 510 (7th Cir.1996) ("The prison administration must proffer some evidence to support its restriction.").

Rather than taking the allegations in Mr. Hammer's complaint as true, the district court erroneously relied on materials outside the complaint in order to conclude that it failed to state a claim. *See Covington v. Illinois Sec. Serv., Inc.,* 269 F.3d 863, 864–65 (7th Cir.2001) (motion to dismiss under Rule 12(b)(6) erroneously granted by relying on attached EEOC letter rather than complaint); *Jacobs v. City of Chicago,* 215 F.3d 758, 766 (7th Cir. 2000). Mr. Hammer had attached several administrative-review documents to his complaint to show that he had exhausted his administrative remedies. 42 U.S.C. § 1997e(a); *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir.2002). The district court focused on two documents that were responses from Warden Lappin denying two of Mr. Hammer's requests for interviews on the basis of safety and privacy concerns. Instead of accepting Mr. Hammer's allegations that these explanations were a "guise" and not the reasons his speech is being restricted, the district court accepted Warden Lappin's explanations as true: "Warden Lappin's response shows that he considered the very unique environment of the death row unit . . . It is clear that Lappin's decision and the supporting regulations are reasonably related to legitimate penological interests." At this early pleading stage, the district court erred by relying on those documents rather than on Mr. Hammer's complaint. *Covington,* 269 F.3d at 865; *Wynn,* 251 F.3d at 593–94; *Jacobs,* 215 F.3d at 766.

To be clear, we express no opinion about the merits of Mr. Hammer's claim, whether the prison's restrictions were justified, or the constitutionality of any regulations. But Mr. Hammer has properly stated a claim and his complaint should not have been dismissed.

Accordingly, we REVERSE and REMAND to the district court for further proceedings.