UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted September 22, 2005[*]
Decided October 19, 2005

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2175

| | |
|---|---|
| GREGORY ADAMS,<br>    *Plaintiff-Appellant*, | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Western Division |
| *v.* | No. 05 C 50048 |
| U. DURAI, et al.,<br>    *Defendants-Appellees.* | Philip G. Reinhard,<br>*Judge.* |

**O R D E R**

Illinois inmate Gregory Adams suffers from schizophrenia.  In a complaint filed under 42 U.S.C. § 1983, Adams claims that a prison doctor and several administrators were deliberately indifferent to his condition in violation of the Eighth Amendment.  The district court dismissed the complaint under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  Adams appeals.

---

[*] Appellees notified this court that they were never served with process in the district court and would not be filing a brief or otherwise participating in this appeal.  After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary.  Accordingly, the appeal is submitted on the appellant's brief and the record.  *See* Fed. R. App. P. 34(a)(2).

For our purposes we accept the allegations in the complaint as true. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Because of his schizophrenia Adams hears voices. While he was incarcerated at Stateville Correctional Center, doctors treated him with a combination of Seroquel (a psychotropic) and Paxil (an antidepressant). He took these medications without experiencing adverse side effects. After Adams was transferred from Stateville to the Dixon Correctional Center, he met with a Dr. Durai for the first time and told him that his current medications controlled the voices he heard during the day, "but at night the voices got really bad." In response Dr. Durai substituted Risperdal (a psychotropic) for the Seroquel and Paxil. Adams took the Risperdal, but it caused him to regurgitate every time he ate, resulting in the discontinuance of this medication under the direction of another physician at the Dixon infirmary. Dr. Durai thereafter prescribed what Adams identifies as "the Psy. Med. Agiocath." Adams asked the physician about the medication's possible side effects, and Dr. Durai replied that Agiocath was "new to the market" but would control the voices.

After beginning treatment with Agiocath, Adams experienced an episode of priapism.[1] Doctors at Dixon referred Adams to the University of Illinois Research Center, where examining physicians concluded that the "Agiocath" caused the priapism and recommended that Adams stop taking the medication. When Adams returned to Dixon, Dr. Durai and a second physician again prescribed Seroquel and Paxil. Adams reported to Dr. Durai two or three weeks later that he was "doing fairly well" taking Seroquel and Paxil. Dr. Durai continued him on Seroquel but discontinued the Paxil.

Adams later experienced a second episode of priapism. Dixon's Medical Director, Dr. Mesrobian, treated Adams for this second episode, cancelled all of his medications, and sent him back to the University of Illinois Research Center to determine whether "the medications has or had any lifetime problems or had any adverse effect on [Adams's] reproductive organs." The university doctors concluded that Adams was "alright/OK," but at the time he filed his lawsuit Adams was being given nothing to combat the voices he hears.

Prior to filing suit, Adams submitted two prison grievances, each complaining about Dr. Durai's choice of medications and the resulting side effects. Adams demanded reassignment to another psychiatrist. Counselors Schryver and Callan

---

[1]Priapism is a "[p]ersistent, painful erection of the penis without sexual desire or arousal." American Medical Association, *Complete Medical Encyclopedia* 1017 (Jerrold B. Leikin & Martin S. Lipsky eds., 2003). It is a rare side effect of Seroquel and other psychotropics, *Physicians' Desk Reference* 664 (59th ed. 2005), and a reported side effect of Paxil, *id.* at 1591.

denied the grievances. Adams submitted an appeal to the Administrative Review Board, which was met with a request for additional information. Adams, who apparently never responded to the request, then brought this action against Dr. Durai, Schryver and Callan, and reviewing official Walker. The district court dismissed the complaint at the initial screening stage, reasoning that Adams pleaded no more than his disagreement with Dr. Durai's medical judgment and that, without a valid claim against the doctor, his case against the administrators who denied his grievances also failed.

Adams, who was *pro se* in the district court, is now represented by counsel. He argues on appeal that the district court erred in dismissing his complaint under § 1915A(b)(1) because he adequately pleaded a § 1983 claim for denial of medical care arising out of Dr. Durai's decisions to treat him with Agiocath, a drug that does not appear in a search of the U.S. Food and Drug Administration website, and to remove him entirely from other medications. Although Adams's complaint does not focus on the possibility that Agiocath was an unapproved drug, this allegation is consistent with the facts he pleaded, so we may consider it on appeal. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996) (holding that appellate court may consider new factual allegations raised for first time on appeal so long as they are consistent with complaint).

We review Adams's complaint *de novo* and draw all inferences in his favor. *See Zimmerman*, 226 F.3d at 571. A complaint need include only "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer," *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002), and thus we cannot affirm the dismissal unless "it appears beyond doubt" that Adams can prove no set of facts that would entitle him to relief, *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see Zimmerman*, 226 F.3d at 571. Moreover, because Adams proceeded *pro se* in the district court, we construe his complaint liberally and subject it to less stringent scrutiny than complaints prepared by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

To establish § 1983 liability for denial of medical care, an inmate must demonstrate that he was suffering from an objectively serious medical condition that the defendants knew about but ignored. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Board v. Farnham*, 394 F.3d 469, 479-80 (7th Cir. 2005). Negligence or even gross negligence does not give rise to an Eighth Amendment claim, but blatantly inappropriate treatment or intentional mistreatment is actionable under § 1983. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974). Moreover, the Eighth Amendment protects against deliberate indifference to current serious health problems as well as to conditions that pose "an unreasonable risk of serious damage to future health." *Board*, 394 F.3d at 479 (emphasis omitted).

Adams's allegations extend beyond mere disagreement with Dr. Durai's choice of treatment. Schizophrenia is a serious illness. *See Palmer v. Cir. Ct. of Cook County,* 117 F.3d 351, 352 (7th Cir. 1997); *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir. 1996). Adams complains that Dr. Durai administered an unapproved drug that caused potentially serious side effects and then later discontinued his FDA-approved medications altogether. His allegations may not be true, and quite possibly Adams is mistaken about the drugs he was given or that are now available to him. Nonetheless, we are required to accept his allegations as true, as was the district court at this early stage of the litigation. Thus the district court should have allowed the case to proceed as to Dr. Durai.

We reach a different result as to Schryver, Callan, and Walker. To establish an Eighth Amendment claim against these administrative officials for denying his grievances, Adams would have to show that they were personally responsible for the alleged constitutional deprivations. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir. 1996). Just because an inmate has complained to prison officials about unconstitutional conditions of confinement does not mean that the administrator who reviewed but denied the complaint bears personal responsibility for the alleged conduct. Especially in the area of medical care, prison officials who are not physicians themselves are entitled to defer to the medical judgment of staff physicians. *See Perkins v. Lawson,* 312 F.3d 872, 875-76 (7th Cir. 2002). An administrator does not become responsible for a doctor's exercise of medical judgment simply by virtue of reviewing an inmate grievance, *see Greeno,* 414 F.3d at 655-56, and that is all Adams alleges here. The district court's dismissal of the claims against defendants Schryver, Callan, and Walker was proper.

Accordingly, the judgment is VACATED insofar as it dismisses the suit against Dr. Durai, and the case is REMANDED for the case against him to proceed. In all other respects the judgment is AFFIRMED.