NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 26, 2012[*]
Decided September 26, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1142

| | |
|---|---|
| JEFFREY P. SOUSA,<br>*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 11-2132 |
| KEITH ANGLIN, et al.,<br>*Defendants-Appellees.* | Michael P. McCuskey,<br>*Judge.* |

**O R D E R**

Jeffrey Sousa, an Illinois prisoner, was assaulted twice by a cellmate at the Danville Correctional Center. He later was moved to a less desirable cell and ultimately transferred to another prison. In this lawsuit under 42 U.S.C. § 1983, Sousa alleges that two Danville guards engineered his pairing with a "bad cellie" whose violent behavior was known and promoted by the warden. Sousa claims that these individuals, along with an internal-affairs

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

officer, violated the Eighth Amendment by failing to protect him from the "bad cellie" who beat him. He also claims that the guard who moved him to the unpleasant cell violated his right to due process, and that the warden likewise denied him due process by authorizing his transfer away from Danville. The district court questioned Sousa about his complaint during a "merits review" conducted by video link, and afterward dismissed the suit prior to service for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1). We conclude that Sousa states an Eighth Amendment claim against the warden and two of the guards, and thus we vacate the judgment in part and remand for further proceedings.

Our factual recitation is drawn from Sousa's second amended complaint. Because his suit was dismissed at the pleading stage, we presume for purposes here that Sousa's allegations are true and draw all reasonable inferences in his favor. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

Sousa was transferred in 2008 to Danville, a medium-security institution. When Sousa arrived, Correctional Officer Waller searched his property and said he found matches, which are prohibited. Sousa was disciplined despite his insistence that Waller had planted the matches. Waller did not like being called a liar, so he asked Correctional Officer Ward, who could control Sousa's cell assignment, to pair him with a "bad cellie." Ward selected Frederick Tremain, a 260-pound "barn boss" for Warden Anglin. (Years ago wardens in Illinois embraced the "barn boss" system of allowing or encouraging especially brutal prisoners to function informally as enforcers. *See Kelly v. Ogilvie*, 220 N.E. 2d 174, 175 (Ill. 1966); *see also* Stefano Esposito, *The 1967 Report: Jail Inmates Rule the Roost*, CHI. SUN-TIMES, Sept. 17, 2004, at 20.) Tremain already had assaulted at least five other cellmates, and Sousa soon became his sixth victim. All of the others had sent "pleas" to Anglin that were ignored; Sousa likewise wrote Anglin (after each attack, according to his initial complaint), but these emergency grievances were ignored too. Sousa later complained about Tremain to Lieutenant Campbell of Internal Affairs, but Campbell did not investigate the complaint.

After lodging a total of five grievances about Tremain, Sousa was paired with a gay inmate. He disliked the cellmate's sexual orientation and complained to Major Cunningham, who responded by moving Sousa to a cell at Danville even less to his liking. Eventually, Warden Anglin transferred Sousa to the Dixon Correctional Center, also a medium-security prison. This transfer prevented Sousa from completing college courses he was taking at the time.

Sousa filed his complaint, along with a motion for appointment of counsel, in May 2011. The district court declined to recruit a lawyer for Sousa, reasoning that his participation in college-level courses demonstrated an ability to litigate his claims on his own. The court then convened a "merits review" with Sousa participating by video conferencing. As far as we can tell, no recording was made of that hearing, and the district

court has not supplied us with a written decision analyzing Sousa's complaint or spelling out what further information about his claims was developed during the video conference. All we have from the district judge is a brief docket entry concluding that Sousa's second amended complaint fails to state a claim. As stated in that entry, the court reasoned that Sousa does not state a claim under the Eighth Amendment because "[d]efendants did not have prior knowledge that Plaintiff would be assaulted." The court added that Sousa did not have a right under the Due Process Clause to avoid segregation or transfer to another prison. This dismissal, the court said, counted as a "strike" under 28 U.S.C. 1915(g).

On appeal Sousa presses both the due process claims and the Eighth Amendment claim. He also argues that the district court abused its discretion by denying his motion to appoint counsel.

We can quickly dispense with Sousa's due process claims, which arise from Major Cunningham's cell reassignment and the decision of Warden Anglin to transfer Sousa to Dixon. "Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause," *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011), and thus Sousa cannot complain about being moved to a less desirable cell, *see Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Nor did Sousa have a protected liberty interest in being housed at Danville rather than Dixon, so he also fails to state a due process claim arising from the transfer. *See Townsend*, 522 F.3d at 771; *Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005). That the transfer to Dixon interferred with his college coursework does not alter that conclusion. *See Zimmerman*, 226 F.3d at 571–72 (explaining that inmate did not have constitutional right to participate in educational programs).

In contrast, Sousa's Eighth Amendment claim against Warden Anglin, Lieutenant Campbell, and Correctional Officers Waller and Ward requires a closer look. To state a claim for failure to protect, Sousa needed to allege that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendants acted with deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Sousa meets the first element: He alleges that he was housed with a 260-pound inmate who, because of his history of attacks on at least five prior cellmates and his status as a "barn boss," posed a significant risk of violence to the next person who shared his cell. *See Santiago v. Walls*, 599 F.3d 749, 753, 758 (7th Cir. 2010) (explaining that inmate's allegation that warden knew about cellmate's history of violence was sufficient to plead first element of Eighth Amendment claim against warden for failure to protect plaintiff from assault by cellmate); *Brown v. Budz*, 398 F.3d 904, 907–08, 910–11 (7th Cir. 2005) (concluding that white detainee sufficiently pleaded first element of claim for failure to protect by

alleging that defendants permitted black detainee with known history of unprovoked assaults against whites to roam unsupervised in day room where he assaulted plaintiff).

Sousa also satisfies the second element for all but Campbell: He alleges that Anglin, Waller, and Ward all understood but ignored the risk that Tremain would endanger his next cellmate. *See Pierson v. Hartley*, 391 F.3d 898, 900–01, 903 (7th Cir. 2004) (upholding jury verdict for plaintiff who was assaulted and seriously injured by another inmate the defendants assigned to plaintiff's dormitory despite knowledge of inmate's history of violent conduct and recent possession of a weapon in facility). In fact, Sousa alleges that Waller and Ward acted *intentionally* to facilitate Tremain's attacks: Waller asked Ward to bunk Sousa with a "bad cellie" to retaliate for Sousa's accusation that Waller had planted matches in his belongings; they settled on Tremain *because* of his past violence and status as one of Anglin's barn bosses. Sousa also states that he notified Anglin of the attacks when he submitted two emergency grievances describing the attacks and requesting a cell change, both of which were ignored. These allegations are sufficient, at the pleading stage, to state a claim that Anglin, Waller, and Ward "actually knew or consciously turned a blind eye toward an obvious risk." *See Santiago*, 599 F.3d at 758–59 (concluding that inmate pleaded deliberate indifference by alleging that warden had ignored emergency grievances about risk that cellmate posed to inmate); *Brown*, 398 F.3d at 913–16 (concluding that detainee pleaded deliberate indifference by alleging that defendants did nothing to restrain assailant after learning about his prior attacks against other detainees). Campbell, though, is not implicated in the events leading up to either of Tremain's assaults against Sousa.

Sousa also submits that the district court abused its discretion when it denied his motion to appoint counsel. But Sousa has no right to court-appointed counsel for this civil suit, *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006), and the district court reasonably denied the motion after assessing the complexity of Sousa's claims and his ability to litigate his claims. *See Romanelli*, 615 F.3d at 851–52; *Pruitt v. Mote,* 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc).

The order dismissing Sousa's Eighth Amendment claim against Warden Anglin and Correctional Officers Waller and Ward is VACATED, and the case is REMANDED for further proceedings on that claim. In all other respects the judgment is AFFIRMED. In light of this resolution, Sousa has not incurred a strike for the filing of his complaint or this appeal. *See Turley v. Gaetz*, 625 F.3d 1005, 1012 (7th Cir. 2010).