NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 8, 2013[*]
Decided March 26, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2305

| | |
|---|---|
| RONALD SCHROEDER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-C-232 |
| DOUG DRANKIEWICZ and KARL HELD, *Defendants-Appellees.* | Patricia J. Gorence, *Magistrate Judge.* |

**O R D E R**

Ronald Schroeder, a Wisconsin prisoner, contends that a state probation/parole agent and the agent's supervisor violated his rights under the Constitution and state law by trying to stop him from mailing birthday cards to his minor daughters. The district court (through a magistrate judge presiding by consent) granted summary judgment for the defendants, and Schroeder appeals. We affirm the judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

## I. Background

We recount the facts in the light most favorable to Schroeder and draw all reasonable inferences in his favor. *See Woods v. Comm'r of the Ind. Dep't of Corr.*, 652 F.3d 745, 748 (7th Cir. 2011). A jury in Wisconsin state court found Schroeder guilty of sexually assaulting his adult girlfriend. Defendant Doug Drankiewicz, then a probation/parole agent for the Wisconsin Department of Corrections, interviewed Schroeder while conducting a presentence investigation. That interview did not go smoothly, and immediately afterward Schroeder complained about Drankiewicz in a letter to an official at the Wisconsin Department of Justice. According to Schroeder, Drankiewicz had said during the interview that he was "not buying" Schroeder's story and threatened that Schroeder would "go to prison for a long, long time" if he did not admit what Drankiewicz wanted him to confess. Schroeder wrote that Drankiewicz's conduct had left him feeling intimidated. He asked that another agent finish the presentence investigation, to no avail.

The state judge sentenced Schroeder to 6 years' imprisonment to be followed by 12 years of extended supervision. One condition of supervision is that Schroeder not have "contact with minors, except incidental and in a circumstance where he is supervised," such as at a "workplace or family event." During the sentencing hearing, the judge criticized Drankiewicz's presentence investigation, stating that it had been "unfair" and "produced an unbalanced result." The judge accused Drankiewicz of going to "extraordinary lengths" to point out damaging allegations from Schroeder's past, while ignoring potentially mitigating information. The judge rejected some stricter conditions of extended supervision proposed by Drankiewicz, including one that would have categorically prohibited all contact "with any minors."

Several months after his sentencing, Schroeder wrote to adult relatives from prison asking them to send school pictures of his daughters, who were then four and six years old. A prison employee called Drankiewicz questioning whether Schroeder's request violated the terms of the judgment in his criminal case. Drankiewicz said "yes," and explained his view that Schroeder is an untreated sex offender in denial who is not to have contact with any minors until his risks and needs are more thoroughly evaluated. Soon after, Schroeder tried sending his ex-wife a letter containing birthday cards for his daughters, but the prison employee seized the letter and again called Drankiewicz asking if Schroeder was allowed to mail the cards. This time Drankiewicz consulted with Defendant Karl Held, his supervisor. Held agreed that the conditions of Schroeder's extended supervision barred all contact with minors, so Drankiewicz told the prison employee that Schroeder was not permitted to send the birthday cards. The prison refused to let Schroeder mail the letter containing the cards.

Schroeder immediately protested to the sentencing judge. The judge promptly held a hearing and clarified that the judgment of conviction did not bar Schroeder from sending mail to his children through their mothers. (Schroeder has at least one other child from a different marriage.) At the hearing Drankiewicz admitted that he had not reviewed the precise language of the judgment before giving the prison employee his personal opinion that Schroeder was barred from contacting minors. For his part, Held testified that his conversations with Drankiewicz had focused only "on the no contact with minors clause of the order." The judge corrected these mistakes, clarifying that the judgment permitted Schroeder "to send cards, letters, and gifts to his own children" if the mailings are "addressed to the children's mothers." Sending mail to his children through their mothers, the judge said, "certainly would be supervised contact," which was permitted under the terms of the judgment. The court formally amended the judgment to make that understanding explicit, even though, the judge said, the letters to the children through their mothers were already "approved under the existing court orders." After the hearing, and less than two months after prison officials prevented Schroeder from mailing the birthday cards, the seized cards were returned to Schroeder. It is not clear from the record whether Schroeder ever mailed them.

A year later, in January 2010, Drankiewicz and Held exchanged e-mails about an accusation of child abuse that had been incorrectly listed in Schroeder's presentence report. In the e-mails they refer to Schroeder as "Silly," the stage name he previously used when performing as a clown. Held advised Drankiewicz in one e-mail that they should stop referring to him by this name because calling Schroeder anything "other than his legal name may be construed negatively" if the e-mails were examined in future litigation.

Schroeder then brought this action against Drankiewicz and Held in Wisconsin state court. He claimed that by interfering with his attempt to mail birthday cards to his daughters, they violated his First Amendment right to free speech and his "right to familial relations," and also had retaliated against him. Schroeder further claimed that the defendants' conduct constituted tortious interference with the sentencing judge's order, conspiracy to interfere with that order, and negligence under state law. The defendants removed the case to federal court.

The district court granted summary judgment for the defendants on all of Schroeder's claims. The court reasoned that before the state judge clarified the matter, the language of the judgment of conviction arguably supported the defendants' interpretation that Schroeder was not authorized to send cards to his daughters through their mothers. And, the court added, the defendants had not violated the Constitution or state tort law simply by conveying their understanding of the original judgment to the inquiring prison employee.

## II. Analysis

On appeal Schroeder makes a litany of arguments, but all of them restate his primary contention that the district court failed to construe the evidence at summary judgment in the light most favorable to him. We review a grant of summary judgment de novo and may uphold the decision on any ground presented to the district court and supported by the record. *See Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011). Although Schroeder strains to find flaws in the district court's analysis, we agree with the court's conclusion that as a matter of law, Schroeder cannot recover on any of his claims.

In the first place, as the defendants have argued throughout this case, Schroeder did not suffer a cognizable constitutional injury under the First Amendment.[1] Although Schroeder may be disappointed that he could not send a letter containing birthday cards to his daughters at the time of his choosing, the only harm he suffered was a delay of less than two months in sending *a single piece* of personal mail. This was not an injury of constitutional dimension. *See Zimmerman v. Tribble*, 226 F.3d 568, 572–73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to state First Amendment claim); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim). Moreover, neither Drankiewicz nor Held set or implemented prison policy. At best, the evidence suggests that a prison employee solicited Drankiewicz's interpretation of a condition of supervision that would apply after Schroeder's release so that the prison could enforce it while he was incarcerated.

Schroeder's retaliation claim fares no better. To make out a prima facie case of retaliation, he needed proof that protected speech was a motivating factor behind the allegedly retaliatory conduct of the defendants. *See Kidwell v. Eisenhauer*, 679 F.3d 957,

---

[1] In addition to his First Amendment claim, Schroeder also claims that the defendants violated the Fourteenth Amendment by interfering with his substantive due-process right to "familial relations." Where a putative due-process claim overlaps with a claim rooted in a more explicit constitutional provision, we analyze the claim under the more specific provision. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006). Accordingly, we consider Schroeder's claims under the First Amendment.

965–66 (7th Cir. 2012); *Greene v. Doruff*, 660 F.3d 975, 977–80 (7th Cir. 2011). But Schroeder adduced no evidence allowing a jury reasonably to infer that his written complaint about Drankiewicz's conduct during the presentence interview motivated the defendants to misrepresent their understanding of the judgment so that prison administrators would stop Schroeder from sending birthday cards to his daughters. The best that Schroeder can do is point to the sentencing judge's criticism of Drankiewicz's presentence investigation, which occurred months before the phone calls at issue in this case, and the e-mails exchanged more than a year later referring to Schroeder by his stage name of "Silly" the clown. Schroeder is correct that he is entitled to have reasonable inferences drawn in his favor, but inferences resting on conjecture (as these do) are not reasonable. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

What remains are Schroeder's claims under state law. Essentially he accuses the defendants of intentionally or negligently interfering with the judgment of conviction, or conspiring to do so. These claims rest entirely on the flawed premise that a judgment expressly *restricting* Schroeder's contact with minors instead can be read to affirmatively *authorize* such contact. As we have noted, the original judgment was not unambiguous on this point; it was not precise about the extent to which Schroeder was allowed to have contact with his children. Until the state court clarified that sending letters to his children through their mothers was a form of permissible supervised contact, the defendants' interpretation, though mistaken, cannot be understood as an attempt to interfere with the judgment. Regarding the negligence claim, Schroeder cites no Wisconsin authority holding that probation and parole agents owe a duty to prison inmates to provide accurate advice to prison employees about conditions of supervised release, or that a breach of this putative duty would allow an aggrieved inmate to recover damages for a negligently inflicted psychological injury. It follows that Schroeder did not establish an entitlement to redress even if a jury could find that the defendants were less than careful in explaining the judgment of conviction to the prison employee.

AFFIRMED.