# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-4190

ROBERT HOSKINS,

*Plaintiff-Appellant,*

v.

CONNIE LENEAR, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Western Division.
No. 03 C 50412—**Philip G. Reinhard**, *Judge.*

_____

SUBMITTED NOVEMBER 30, 2004—DECIDED JANUARY 7, 2005

_____


Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

PER CURIAM.     Robert Hoskins, an Illinois prisoner, brought suit under 42 U.S.C. § 1983 alleging that prison staff retaliated when he exercised his right to use the prison's grievance system. The district court dismissed the suit under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. We affirm in part and vacate and remand in part.

The facts according to Hoskins, which we accept as true, are as follows. *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). On January 17, 2003, Hoskins was working his job in the cafeteria at Dixon Correctional Center when Officer Connie Lenear, the food services supervisor, called

him a racial epithet because he could not help her locate cartons of chocolate milk. Hoskins immediately reported the incident to Lenear's supervisor and was told that he should file a grievance, which he did that same day.

Three days later, on January 20, Hoskins was talking to another inmate when Lenear approached him. Hoskins told Officer Lenear that he was not speaking to her. Shortly thereafter, a different inmate reported to Hoskins that Lenear had said she intended to get Hoskins transferred out of Dixon. The inmate also said he had overheard Captain Schott, a shift supervisor, tell Lenear that she should write up a disciplinary ticket and he would take care of Hoskins. Lenear in fact wrote up a disciplinary ticket for "insolence" that day. That evening, on Schott's instructions, Hoskins was placed on "investigative status" and taken to segregation.

The next day, January 21, Hoskins lodged grievances concerning both Officer Lenear and Captain Schott. These grievances alleged that Lenear had falsified the disciplinary ticket for insolence to retaliate for the grievance Hoskins had filed against her on January 17, and that Schott had worked with Lenear to engineer his placement in segregation, again to retaliate for the January 17 grievance.

Hoskins was found guilty of the insolence charge on January 28 and, as punishment, lost his work assignment in the cafeteria. Although he was not ordered to serve a term in segregation, he nonetheless remained there on investigative status. On February 11 he was visited there by Internal Affairs Officer Robert Bock, who told Hoskins that he did not know "what exactly he was investigating," and that he only knew that Hoskins and Officer Lenear were "not getting along." Then on February 17 Hoskins was visited by Captain Schott, who promised to "make things go away" if Hoskins would do the same. When Hoskins answered that he would not drop the grievances against either Schott or

Lenear, Schott responded that he would have Bock "write up" a disciplinary case that would get Hoskins "sent out of the prison."

The day after Captain Schott's visit, Hoskins received a disciplinary report, written by Bock and dated that same day, charging him with making "possible verbal threats towards staff." According to this report, informants had reported to Bock that they witnessed Hoskins make "an inference of physical harm" toward Lenear. Bock's report does not identify what Hoskins purportedly said, but based on the report an adjustment committee found Hoskins guilty on February 24 and sanctioned him with a demotion to C-grade (a loss in privileges), two months in segregation, and a recommendation for a transfer. Hoskins was then transferred to Lawrence Correctional Center.

After his transfer, Hoskins continued to challenge his disciplinary conviction for threatening Officer Lenear. On June 30, 2003, the Administrative Review Board concluded that the conviction was not substantiated by the record and remanded the case to the warden of Dixon "to have the report rewritten to substantiate the charges." The Board directed the warden to timely forward the revised report to the warden at Lawrence, where Hoskins was confined, to be reheard. In mid-August, after hearing nothing more, Hoskins wrote the Board, arguing that the warden at Dixon had not acted in a timely manner and should not be given more time. The Board agreed, and on September 10 directed that Hoskins' conviction be expunged, and that the reduction in status and two months in segregation be reversed. The Board, however, did not order Hoskins transferred back to Dixon.

Hoskins thereafter sued Officer Lenear, Captain Schott, Officer Bock, the members of the adjustment committee that found him guilty of threatening Lenear, and the warden at Dixon. The district court, construing Hoskins'

claim as one that he was denied due process when he was disciplined in retaliation for the grievances he filed against Lenear and Schott, dismissed the complaint prior to service for failure to state a claim. The court, although recognizing that Hoskins was not returned to Dixon, reasoned that he received all the process that was due through his administrative appeals because the ill effects of the retaliation were cured when the other punishments were overturned. The court also went on to conclude that Hoskins had not alleged a liberty interest sufficient to implicate due process. We review that decision de novo. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

To the extent that Hoskins claims he was denied due process based on these events, we agree with the district court that his complaint fails to state a claim. We need not focus on Hoskins' success in his administrative appeals because, as the district court observed, the disciplinary case, even if it was fabricated, implicated no federally protected liberty interest. The punishments Hoskins suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (disciplinary segregation); *Thomas v. Ramos,* 130 F.3d 754, 761-62 & n.8 (7th Cir. 1997) (temporary segregation and demotion to C-grade status); *Cochran v. Buss,* 381 F.3d 637, 641 (7th Cir. 2004) (transfer).

However, we disagree with the district court's analysis of Hoskins' retaliation claim. In our view, due process and retaliation claims are analyzed differently. Conduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). In *Babcock*, a prisoner alleged that officers retaliated against him for exercising his right to file a grievance. In that case, we recognized that the retaliatory action complained of by the prisoner (placement in adminis-

trative detention) did not amount to a protectable liberty interest. However, we held that a prisoner may still maintain a retaliation claim even when the retaliatory actions do not independently violate the Constitution. *Babcock*, 102 F.3d at 275.

Prisoners are entitled to utilize available grievance procedures without threat of recrimination, *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002), and to state a claim, Hoskins was required only to allege enough to put the defendants on notice and enable them to file an answer. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Hoskins' allegations against Officer Lenear, Captain Schott, and Officer Bock specified a retaliatory action (filing a false disciplinary report), named them as defendants, and asserted a constitutionally protected activity, the exercise of which caused the officers' retaliatory action (his grievance against Lenear). Hoskins' complaint is therefore sufficient to state a retaliation claim. *Higgs*, 286 F.3d at 439. If believed, Hoskins' claim that Lenear, Schott, and Bock filed and pursued a false disciplinary case on account of his grievances against Lenear and Schott would entitle him to damages. *Babcock*, 102 F.3d at 275.

We note though, that Hoskins states a retaliation claim only as against these three defendants. Even though he also names the members of the adjustment committee and the warden as defendants, these additional defendants, by Hoskins' account of events, did not participate in acts of retaliation. Thus, we can affirm the dismissal of Hoskins' suit as to them.

Accordingly, we VACATE the dismissal of Hoskins' retaliation claim against Officer Lenear, Captain Schott, and Officer Bock, and REMAND for further proceedings. In all other respects, the judgment of the district court is AFFIRMED.

**A true Copy:**

    **Teste:**

           _____
          *Clerk of the United States Court of*
           *Appeals for the Seventh Circuit*