# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 03-3257

DONNIE MCELROY,

*Plaintiff-Appellant,*

v.

GARY LOPAC, et al.,

*Defendants-Appellees.*

————————

Appeal from the United States District Court for
the Northern District of Illinois, Western Division.
No. 03 C 50207—**Philip G. Reinhard**, *Judge.*

————————

SUBMITTED MARCH 8, 2005[*]—DECIDED APRIL 7, 2005

————————

Before FAIRCHILD, KANNE, and EVANS, *Circuit Judges.*

PER CURIAM. Pro se state prisoner Donnie McElroy sued
several prison officials under 42 U.S.C. § 1983, claiming
that they falsely charged him with a disciplinary violation
and fired him from his prison job in retaliation for exercis-

---

[*] Appellees notified this court that they were never served with
process in the district court and would not be filing a brief or other-
wise participating in this appeal. After examining the appellant's
brief and the record, we have concluded that oral argument is
unnecessary. Thus, the appeal is submitted on the appellant's
brief and the record. *See* Fed. R. App. P. 34(a)(2).

ing his First Amendment right to free speech. Screening the case under 28 U.S.C. § 1915A, the district court dismissed the complaint for failure to state a claim because, in the court's view, McElroy did not "specify a specific event, chronology, or reason for retaliation." We affirm, but for different reasons.

Accepting McElroy's allegations as true, *see DeWalt v. Carter*, 224 F.3d 607, 610 n.1 (7th Cir. 2000), we recount the events of McElroy's firing. Correctional Officer Gary Lopac, the "Superintendent of Industries," supervised McElroy at his job in the sewing shop. Lopac announced on July 22, 2002, that he was forced to terminate the inmate workers because the sewing shop would be closing in about two weeks. Lopac explained that some of the inmate workers would "immediately" be transferred to the optical glass shop. Those who were not immediately transferred would be placed according to seniority on a wait list for available positions there. McElroy asked whether inmate workers would receive "lay-in pay" while unemployed and waiting to be transferred to the optical glass shop. The inquiry upset Lopac, who responded that McElroy "was trying to be some type of 'trouble-maker.'" According to McElroy, "it is widely known" that Lopac will try to "unjustly 'fire'" an inmate he deems "a 'trouble-maker' or one who questions his personal policies." Several days after the announcement, Lopac issued a memo announcing that no lay-in pay would be granted and initiating an additional hiring criteria precluding inmates losing their sewing jobs from transferring to the optical shop if they did not have four to seven years remaining on their sentences. This requirement excluded McElroy.

On August 1, 2002, before the sewing shop had ceased operations, McElroy chose not to attend the 6:30 a.m. breakfast for inmates assigned to jobs, electing instead to go directly from his housing unit to the sewing shop for his 7:00 a.m shift. Even though the prison usually permitted inmates to skip breakfast, Correctional Officer Considine

made McElroy wait to leave for his job until his unit's "breakfast line was dismissed." The line was held up and not dismissed until 7:20 a.m., and consequently McElroy arrived late to work. Correctional Officer Glover, who is apparently a supervisor at the sewing shop, ordered that McElroy be sent back to his unit and directed that he not "report back to work anymore." Glover did not fire another inmate who was similarly delayed by the late dismissal of the unit's breakfast line.

Later that day, McElroy met with Officer Glover to explain why he was late for work. Glover explained that Officer Lopac had ordered him to fire McElroy and to write him up in a disciplinary report for "unauthorized movement," "disobeying a direct order," and "failure to report." According to Glover, Lopac disliked McElroy because of the inquiry about lay-in pay and thus "did not want to hear any excuses" for McElroy's tardiness.

In a hearing on the disciplinary charges, McElroy argued that Officer Lopac had ordered the disciplinary report in retaliation for questioning Lopac's policy on lay-in pay. Lieutenant John Jennings, who presided over the disciplinary board, continued the proceedings so that he could interview Officers Lopac and Glover as well as other witnesses. After that investigation the board found McElroy not guilty and recommended that he be allowed to resume working but he was not reassigned to the optical glass shop ostensibly because he did not meet the criteria put in place by Lopac. According to McElroy, Lieutenant Jennings privately told him that Officers Lopac and Glover admitted to firing McElroy because he made himself a "trouble-maker" by inquiring into Lopac's "personal policies."

After exhausting his administrative remedies, McElroy filed suit claiming that, in retaliation for inquiring about lay-in pay, Officers Lopac and Glover falsely charged him with disciplinary violations, fired him from his job, and

refused to reassign him to the optical glass shop. Other prison officials, according to McElroy, shared culpability because they withheld Lieutenant Jennings's written account of the two officers' admissions.

The district court dismissed McElroy's complaint without prejudice, giving him one month to amend. Reasoning that McElroy did not sufficiently allege a "specific event, chronology or reason for the retaliation," the district court concluded that McElroy failed to state a claim of retaliation. When McElroy protested that his complaint already was sufficient, the district court responded by giving him one more month as a "final" deadline to file an amended complaint. Choosing instead to stand on his original complaint and waive the invitation to amend it, *see Alejo v. Heller*, 328 F.3d 930, 935 (7th Cir. 2003), McElroy filed a notice of appeal that became effective when the district court dismissed his case with prejudice after the deadline for amending had passed, *see Albierno v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1998). We review the district court's § 1915A dismissal de novo. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (per curiam).

On appeal McElroy argues that the district court erroneously concluded that he failed to state a retaliation claim when in fact his complaint adheres to the district court's own stated requirement that he plead a specific event, chronology, or reason for the retaliation. Specifically, McElroy alleges in his complaint that Officers Lopac and Glover fired him, filed a "bogus" disciplinary report to insulate their action, and then refused to accept the recommendation to reassign him to the optical glass shop when the disciplinary case was shown to be unfounded—all in retaliation for his inquiries into Lopac's refusal to grant lay-in pay for inmates displaced from their jobs in the sewing shop. We agree with McElroy that his complaint includes more than enough detail to satisfy the pleading standard imposed by the district court, but, more importantly, we note that the

district court required far too much of McElroy in the first place. Our recent cases have rejected any requirement that an inmate allege a chronology of events in order to state a claim of retaliation because such a requirement is contrary to the federal rule of notice pleading. *See* Fed. R. Civ. P. 8; *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Instead, a plaintiff must allege only enough to put the defendants on notice and enable them to respond, and McElroy met this requirement by setting forth in his complaint the retaliatory conduct (taking away his job) and the allegedly constitutionally protected activity (speaking out about lay-in pay) that motivated the defendants. *See Hoskins*, 395 F.3d at 375; *see also DeWalt*, 224 F.3d at 618 ("act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution").

Where McElroy runs into trouble, however, is that his "inquiries" into lay-in pay were not protected speech as would be necessary to satisfy a retaliation claim's requirement of constitutionally protected activity. As in the public-employee context, McElroy's questions concerning Lopac's "personal policies" about lay-in pay must relate to a public concern and not just a personal matter to receive First Amendment protection. *See Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999) (imputing to inmate free-speech claims requirement of public-employee line of cases that protected speech must be about a "public concern"); *Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1993) (content of letter written by inmate co-chair of legal assistance committee not protected speech because it related to personal matter, not public concern); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999) (en banc) ("prisoner's First Amendment rights are not more extensive than those of a government employee"). But McElroy's "inquiries" about lay-in pay were a matter of "purely individual economic importance" and

not of public concern. *Balton v. City of Milwaukee*, 133 F.3d 1036, 1040 (7th Cir. 1998); *see Snider v. Belvidere Township*, 216 F.3d 616, 620 (7th Cir. 2000) (comments about perceived salary disparity *vis-á-vis* other employees is personal issue, not public concern). McElroy's speech was not the type of protected activity under the First Amendment that could support a retaliation claim.

We are not convinced otherwise by McElroy's attempt on appeal to recast his "inquiries" as preparation for grieving his complaint about pay through the prison administrative process, presumably to benefit from the constitutional protection afforded to filing grievances, *see Thomson*, 362 F.3d at 970-71 (filing grievances is constitutionally protected activity sufficient to support a retaliation claim); *DeWalt*, 224 F.3d at 618 (same). McElroy never presented this argument to the district court even when he asked the court to reconsider the dismissal, and so it is waived. *See United States v. Arnold*, 388 F.3d 237, 241 (7th Cir. 2004). In any event, McElroy does not allege that Officer Lopac was aware that McElroy planned to file a grievance (indeed, he has never alleged that he actually filed a grievance about not receiving lay-in pay); rather, his consistent position has been that the retaliatory conduct was in direct reaction to his unprotected inquiries about lay-in pay. *See Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000).

AFFIRMED.

FAIRCHILD, *Circuit Judge*, dissenting. I agree that McElroy's complaint should not have been dismissed for failure to describe the retaliatory conduct more particularly.

Respectfully, however, I do not agree that it should be dismissed because the speech which allegedly caused the retaliation was not a matter of public concern and therefore not protected.

It seems clear that a group of prisoners, not just McElroy individually, were left unemployed by the closing of the sewing shop. All these would have an interest in receiving lay-in pay while unemployed. McElroy's question would surely concern that "public" and the general public would be concerned with the policy of compensating prisoners for whom there is no work.

A true Copy:

     Teste:

                  _____

                  *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*