**Bennie CUNNINGHAM, Plaintiff,**

v.

**Donald N. SNYDER, Jr., et al., Defendants.**

**Nos. CIV. 00–708–GPM, CIV. 00–162–GPM.**

United States District Court, S.D. Illinois.

Sept. 19, 2006.

Richard D. Murray, Jr., Kenneth D. Rose & Associates, Ltd., Anna, IL, for Plaintiff.

Christopher L. Higgerson, James L. Morgan, Randall C. Stauffer, Julie Morgan, Illinois Attorney General's Office, Springfield, IL, for Defendants.

## MEMORANDUM AND ORDER

MURPHY, Chief Judge.

Plaintiff Bennie Cunningham, an inmate at the closed maximum security facility at Tamms Correctional Center ("Tamms") in Tamms, Illinois, brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights by Defendants Donald N. Snyder, Jr., Odie Washington, Richard McVicar, Michael V. Neal, George C. Welborn, Angela Winsor, Homer Markel, and Jack Hartwig, acting under color of state law as officers and employees of the Illinois Department of Corrections ("IDOC"). Defendants have moved for dismissal of the request for damages asserted in Count Three of Plaintiff's operative complaint in this cause (Doc. 32). For the following reasons, Defendants' motion to dismiss (Doc. 101) is **GRANTED**.

### INTRODUCTION

Plaintiff, who is currently serving a seventy-year prison sentence, was first transferred to Tamms in 1998 to complete a term of disciplinary segregation. In 1999, after finishing his term of disciplinary segregation, Plaintiff was placed in administrative segregation at Tamms. Plaintiff's complaint, as originally filed, alleged, inter alia, a violation of Plaintiff's right to procedural due process under the Fourteenth Amendment of the United States Constitution in connection with his assignment to Tamms. Specifically, Plaintiff alleged that he was not permitted to present witnesses and evidence in his own defense at a hearing conducted by IDOC on the matter of Plaintiff's assignment to administrative segregation at Tamms. On preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A by United States District Judge J. Phil Gilbert, to whom this case originally was assigned, Plaintiff's procedural due process claim was dismissed with prejudice for failure to state a

claim upon which relief may be granted. The only one of Plaintiff's claims for relief to survive preliminary review was his claim that he was assigned to Tamms in retaliation for exercising his First Amendment right to complain about the conditions of his confinement by filing grievances and lawsuits against IDOC and its officers and employees.

Plaintiff subsequently filed an amended complaint which alleged, in Count Three, a claim for violation of his procedural due process rights in connection with his original assignment to Tamms in disciplinary segregation, as well as his subsequent assignment to Tamms in administrative segregation. On October 24, 2003, Count Three of Plaintiff's amended complaint was dismissed. On September 15, 2005, Judge Gilbert reinstated Count Three in light of *Westefer v. Snyder,* 422 F.3d 570 (7th Cir. 2005). Thereafter, Judge Gilbert ordered this case consolidated with a case pending on the docket of the undersigned District Judge, *Westefer v. Snyder,* Civil No. 00–162–GPM (S.D. Ill. filed Mar. 7, 2000), and reassigned this case to the docket of the undersigned. Defendants have moved for dismissal of Plaintiff's request for damages in Count Three of his amended complaint, asserting the doctrine of qualified immunity. The Court, having reviewed carefully the submissions of the parties, now is prepared to rule on Defendants' request for dismissal of the damages claim in Count Three.

### DISCUSSION

#### A. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of a complaint, not to resolve a case on its merits. *See Marshall–Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326–27 (7th Cir.2000). When evaluating a Rule 12(b)(6) motion, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir.1999). Because the Federal Rules of Civil Procedure establish a liberal pleading system that requires only notice pleading, "[a].complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal." *National Serv. Ass'n, Inc. v. Capitol Bankers Life Ins. Co.,* 832 F.Supp. 227, 230 (N.D.Ill.1993). A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991).

#### B. Defendants' Motion to Dismiss

As discussed, Defendants seek dismissal of Plaintiff's request for damages in Count Three of his amended complaint on grounds of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. *See also Wilson v. Kelkhoff,* 86 F.3d 1438, 1446 (7th Cir.1996); *Hill v. Shelander,* 992 F.2d 714, 716 (7th Cir.1993); *Marshall v. Allen,* 984 F.2d 787, 791 (7th Cir.1993). "Principles of immunity stem from the belief that the law should develop in injunctive actions or damages actions against public bodies rather than at personal expense." *Greenberg v. Kmetko,* 922 F.2d 382, 384 (7th Cir.1991). *See also Behrens v. Pelletier,* 516 U.S. 299, 312, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (qualified immunity

bars an award of damages, but it does not preclude the granting of injunctive relief); *Flynn v. Sandahl,* 58 F.3d 283, 289 (7th Cir.1995) (qualified immunity is not a defense which is available to government employees or officials who are sued in their official capacities for prospective injunctive relief).

To defeat a qualified immunity defense, a plaintiff bears the burden of demonstrating that "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the defendant ... took." *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *See also Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir.1994); *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir. 1988). "The words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms .... The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). Thus, the Supreme Court of the United States has observed that "the qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate that law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In *Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), the Court stated, "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

that right." *Id.* at 198–99, 125 S.Ct. 596 (quoting *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 199, 125 S.Ct. 596.

To evaluate Defendants' request for qualified immunity properly, it is necessary to examine in some detail both *Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), and the decision of the United States Court of Appeals for the Seventh Circuit in *Westefer* regarding the validity of procedural due process claims substantially identical to the claim asserted in this case, a decision which, as will be discussed infra, largely hinged on *Wilkinson.* The *Wilkinson* decision concerned a class action by inmates at the Ohio super maximum security ("supermax") prison, alleging violations of their procedural due process rights in connection with their assignment to the prison. *See* 125 S.Ct. at 2388–93. In evaluating the inmates' due process claims, the Court reiterated the traditional rule that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement" because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose" *Id.* at 2393 (quoting *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). Nevertheless, the Court stated further, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations[.]" *Id.* "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest ... is not the language of regulations regarding those conditions but the nature of those condi-

tions themselves[.]" *Id.* at 2394. Specifically, an inmate has a liberty interest in avoiding placement at a prison where the conditions of confinement at that prison "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

The *Wilkinson* Court noted that lower federal courts have struggled with the question of the appropriate "baseline" for determining whether conditions of confinement comprise an atypical and significant hardship in relation to the ordinary incidents of prison life. *See* 125 S.Ct. at 2394. However, the Court concluded, confinement at the Ohio supermax prison "imposes an atypical and significant hardship under any plausible baseline .... It follows that [inmates] have a liberty interest in avoiding assignment to [the prison]." *Id.* at 2394–95. Having determined that assignment to the Ohio supermax prison implicates a liberty interest, the *Wilkinson* Court then evaluated the question of the process that is due a prisoner before such conditions of confinement can be imposed on the prisoner. The Court observed that "[b]ecause the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands,' ... we generally have declined to establish rigid rules and instead have embraced a framework to evaluate the sufficiency of particular procedures." *Id.* at 2395 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Thus, the Court evaluated the constitutional sufficiency of Ohio's procedures for placing prisoners at its supermax prison using a traditional test of procedural due process that entails consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The *Wilkinson* Court found that, under the familiar *Mathews* standard, the procedures established for assigning prisoners to the Ohio supermax prison provide sufficient protection to prisoners for due process purposes. *See id.* at 2395–98.

In *Westefer* the Seventh Circuit held, in light of *Wilkinson,* that this Court erred in dismissing the procedural due process claims of a putative class of inmates at the Tamms supermax prison for failure to state a claim upon which relief can be granted. The court noted the allegations of the plaintiffs' complaint describing "the extraordinarily restrictive conditions imposed on prisoners at Tamms." *Westefer,* 422 F.3d at 589. The conditions of confinement alleged by the plaintiffs included "virtually complete absence of human contact ..., virtual elimination of all out of cell movements ..., severe restrictions on showers and out of cell exercise ..., severe restrictions on family visits ..., elimination of all jobs and other programming ..., severe restrictions on religious services ... and on a prisoner's communication with attorneys," as well as restrictions on the property a prisoner can possess. *Id.* The court noted also that, as with the Ohio supermax prison at issue in *Wilkinson,* the only limit on the time a prisoner can be confined to Tamms is the length of the prisoner's sentence, and that inmates at Tamms are sharply restricted in their ability to earn good-time credit due to the deliberate absence of rehabilitation programs at the prison. *See id.* The court held, "In sum, being confined to Tamms is

to be subjected to virtual sensory deprivation, with prisoners forced to spend most days doing literally nothing but staring at the four blank walls of their cells." *Id.* Thus, the court found that the plaintiffs' allegations were sufficient to assert an atypical and significant hardship in relation to the ordinary incidents of prison life such that assignment to Tamms could implicate a liberty interest for due process purposes. *See id.* at 589–90 (citing *Wilkinson,* 125 S.Ct. at 2395).

With respect to the question of whether inmates at Tamms are afforded adequate procedural protections, the *Westefer* court noted that, under IDOC regulations, inmates transferred to Tamms in disciplinary segregation are not required to be given a hearing regarding their transfer until after their term of disciplinary segregation ends. *See* 422 F.3d at 578 (citing Ill. Admin. Code tit. 20, § 505.60(a)). The court noted also that although the files of inmates transferred to Tamms in administrative segregation are reviewed quarterly to determine whether placement at the prison is still appropriate, no such quarterly review is afforded to inmates transferred to Tamms in disciplinary segregation. *See id.* (citing Ill. Admin. Code tit. 20, § 505.70(a)). Further, while inmates transferred to Tamms in administrative segregation are entitled under IDOC regulations to a transfer review hearing within ten working days of their transfer, and receive in addition an annual hearing, *see id.* (citing Ill. Admin. Code tit. 20, § 505.60(a), § 505.70(b)), the court noted that in many instances inmates were never told the reason for their transfer to Tamms, rendering suspect the value of such a hearing. "IDOC regulations do not require the department to notify prisoners why they have been transferred. We doubt whether the transfer review process is effective for prisoners who do not know the grounds for their transfer and who thus· have no basis with which to contest

their transfer." *Id.* at 579. Also, the court pointed out, it is unclear whether inmates can challenge transfer to Tamms through the administrative grievance process set out in IDOC regulations, *see* Ill. Admin. Code tit. 20, § 504.810, and in many instances inmates were told that they could not challenge their placement at Tamms through the grievance process. *See* 422 F.3d at 579–80. In fact, the court noted, "[d]espite a number of Tamms-specific regulations in the Illinois Administrative Code," the court was unable to find "any regulation or department policy that clearly identifies how a prisoner challenges his transfer to Tamms." *Id.* at 580. The court reversed the dismissal of the inmates' due process claims and remanded the case to this Court to determine whether confinement at Tamms implicates a liberty interest and, if so, what procedural protections are owed to inmates placed at the prison. *See id.* at 589–90.

█ The Court agrees with a sister court in this Circuit which stated that "[t]he rule announced in *Wilkinson* "— and, by extension, in *Westefer*—"was a new development that departed in important ways from earlier case law," so that Defendants, who doubtless acted in reliance on that earlier case law, are entitled to claim the protection of qualified immunity. *Lagerstrom v. Kingston,* No. 05–C–718–C, 2005 WL 3555416, at *4 (W.D.Wis. Dec. 27, 2005) (noting on preliminary review of a complaint pursuant to 28 U.S.C. § 1915A that an inmate's claim for damages for an alleged violation of his procedural due process rights in connection with his transfer to the Wisconsin supermax prison likely was barred by qualified immunity). Although Plaintiff argues that resolution of the issue of qualified immunity as to the damages portion of Count Three of his amended complaint should be deferred until discovery as to the claim is

complete, *see Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir.2001) (noting that the issue of qualified immunity generally should be resolved on summary judgment), the Court believes Defendants' entitlement to qualified immunity is clear, so that no purpose would be served by deferring a ruling until the close of discovery. *See Kernats*, 35 F.3d at 1177–83; *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir.1992); *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir.1990); *Holland v. Lane*, No. 92 C 6871, 1995 WL 398891, at *2–7 (N.D.Ill. July 3, 1995); *Siddiqi v. O'Leary*, No. 89 C 5064, 1990 WL 179719, at *3–4 (N.D.Ill. Nov. 6, 1990).

The Court cannot conclude that, under the law of this Circuit as it existed before *Wilkinson* and *Westefer*, Plaintiff had a clearly established liberty interest in avoiding confinement at Tamms. "To determine whether [clearly established] legal norms existed at the pertinent time, we often refer to closely analogous case law, decided before the public official acted or failed to act .... Of course, in analyzing those cases, precise factual congruity is not required." *Abel v. Miller*, 824 F.2d 1522, 1533 (7th Cir.1987). In *Wagner v. Hanks*, 128 F.3d 1173 (7th Cir.1997), the Seventh Circuit adopted what this Court has termed "an extremely stringent interpretation" of the United States Supreme Court's decision in *Sandin v. Conner. Horowitz v. Walker*, Civil No. 05–839–MJR, 2006 WL 2024361, at *2 (S.D.Ill. July 17, 2006). In *Wagner* the court held bluntly that, after *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." 128 F.3d at 1175. The court noted that "it would be difficult ... to make disciplinary segregation sufficiently more restrictive than the conditions of the general population of ... a [maximum-security] prison to count as an atypical and significant deprivation of liberty—that is, to count as a substantial *incremental* deprivation—without scraping

up against the Eighth Amendment's prohibition against cruel and unusual punishments." *Id.* at 1174 (emphasis in original). The court concluded that when prison discipline "takes the form of prolonging the prisoner's incarceration or otherwise depriving him of what has been held to be liberty or property within the meaning of the due process clauses, it is securely actionable." *Id.* at 1176.

Importantly, however, the *Wagner* court concluded further that "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." 128 F.3d at 1176. *See also Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir.2005) (a prisoner has no protected liberty interest in avoiding a disciplinary transfer: "[T]he disciplinary case, even if it was fabricated, implicated no federally protected liberty interest. The punishments Hoskins suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir.1997) (quoting *Sandin*, 515 U.S. at 486, 115 S.Ct. 2293) (an inmate's confinement in disciplinary segregation after a disciplinary committee determined that the inmate's disciplinary sentence did not mandate further time in segregation did not violate due process, because "the time in disciplinary segregation would not inevitably affect the duration of the inmate's sentence and ... it 'did not work a major disruption in his environment.' "); *Williams v. Ramos*, 71 F.3d 1246, 1248–49 (7th Cir.1995) (a segregation unit in which a plaintiff generally was locked in a closed-front cell 24 hours per day, was handcuffed if permitted to leave the cell for showers, medical care, or exercise, was precluded from participating in activities available to

other inmates, and had only limited contact with staff and other inmates did "not greatly exceed[ ] what one could expect from prison life generally[.]").

The Seventh Circuit's decision in *Wagner* generally has been interpreted by trial courts in this Circuit to mean that only disciplinary confinements that affect the length of an inmate's prison term through, for example, the loss of accrued good-time credit implicate a liberty interest. "After *Sandin*, in the prison context, protected liberty interests are essentially limited to the loss of good time credits because the loss of such credit affects the duration of an inmate's sentence." *Cohen v. O'Neill,* No. 01–C–206–C, 2001 WL 34377566, at *1 (W.D.Wis. May 24, 2001) (citing *Wagner,* 128 F.3d at 1176) (an inmate's claim that, as a result of receiving 42 conduct reports, he was punished with a reprimand, 1–10 days' room confinement, 15–60 days' building confinement, 30 days' loss of common area privileges, 10 days' loss of room visit privileges, 15 days' loss of television room, 10 days' loss of recreation, 10–15 days' loss of phone use, temporary and permanent loss of canteen privileges, 30 days of 24–hours extra duty, loss of institution pay, 3–6 days' adjustment segregation, temporary lockup, and 60–120 days' program segregation did not implicate a liberty interest because the plaintiff did not allege that "his time in temporary lock-up extended the overall length of his sentence or that he lost good time credits."). *See also McGrath v. Wells,* No. 06–C–343–C, 2006 WL 2008994, at *6–7 (W.D.Wis. July 17, 2006); *Juarez v. Frank,* No. 05–C–738–C, 2006 WL 47064, at *3 (W.D.Wis. Jan. 6, 2006); *Mark v. Imberg,* No. 05–C–279–C, 2005 WL 1587797, at *7 (W.D.Wis. July 6, 2005); *Meyer v. Teslik,* No. 05–C–269 C, 2005 WL 1463528, at *3 (W.D.Wis. June 21, 2005); *Aalders v. Roth,* No. 02 C 4729, 2002 WL 1998293, at *2–3 (N.D.Ill. Aug. 28, 2002); *United States v. Williams,* No.

96 C 5646, 2000 WL 1273464, at *15 (N.D.Ill. Sept. 6, 2000).

Correspondingly, before *Wilkinson* and *Westefer,* trial courts in this Circuit held routinely that a disciplinary confinement at a supermax prison does not implicate a liberty interest, provided such a confinement did not extend the length of an inmate's sentence. *See, e.g., Collins–Bey v. Frank,* No. 05–C–453–C, 2005 WL 2148539, at *6 (W.D.Wis. Sept. 2, 2005) (rejecting a due process claim based on placement in disciplinary segregation at the Wisconsin supermax prison: "[The plaintiff] contends that his Fourteenth Amendment procedural due process rights were violated when he was not allowed to call and directly question witnesses of his choice at his prison disciplinary hearing .... [The plaintiff] acknowledges that he is not eligible to receive good time credit. As a result, disciplinary actions taken against him do not jeopardize the duration of his sentence. Because he has no protected liberty interest at stake in his prison disciplinary hearing, ... [the plaintiff's] claim that he was denied due process must be denied as legally meritless."); *Thomas v. Corrections Corp. of Am.,* No. 03–C–44–C, 2003 WL 23220781, at *2–3 (W.D.Wis. Feb. 27, 2003) (quoting *Whitford v. Boglino,* 63 F.3d 527, 532 (7th Cir.1995)) ("Plaintiffs allege that they were given 90 or 120 days' disciplinary segregation and transferred to the Supermaximum prison[.] 'A prisoner has no due process right to be housed in any particular facility' and even a transfer to a prison with a more restrictive environment does not implicate his due process rights because the prisoner could have been placed in the more restricted institution initially."); *Freeman v. Litscher,* No. 02–C–024–C, 2002 WL 32348356, at *4 (W.D.Wis. Mar. 12, 2002) ("Plaintiff's allegations do not suggest that he has a protected liberty interest in the outcome of the disciplinary hearing. He

does not allege that he is being held at Supermax beyond the term of his incarceration or that he has lost good time credits because of the disciplinary hearing . . . . Plaintiff has not alleged facts sufficient to establish that remaining at Supermax implicates a liberty interest under *Sandin*. Therefore, he will not be allowed to proceed on this claim because it is legally frivolous."); *Jones 'El v. Berge*, No. 00–C–421–C, 2001 WL 34379611, at *16 (W.D.Wis. Aug. 14, 2001) (holding that the plaintiffs in a class action on behalf of inmates at the Wisconsin supermax prison failed to state a claim for violations of their procedural due process rights, notwithstanding allegations that "the solitary confinement, denial of privileges, additional regulations and restrictions on protected and discretionary activities, the limitation on educational and employment opportunities, the lack of access to legal materials and legal counsel and the behavior modification program at Supermax impose an atypical and significant hardship on plaintiffs in relation to the ordinary incidents of prison life in the Wisconsin prison system . . . . [P]risoners do not have a liberty interest in remaining out of segregation status so long as that period of confinement does not exceed the remaining term of their incarceration."). *Cf. Ferguson v. Pulver*, No. 06–C–303–C, 2006 WL 2289212, at *3 (W.D.Wis. Aug. 7, 2006) (noting that, in light of *Wilkinson* and *Westefer*, although disciplinary confinement that does not extend the length of an inmate's sentence generally does not implicate a liberty interest, it may do so when the confinement entails long-term segregation at a supermax prison).

Concerning procedural due process claims arising from administrative confinements, in *Wagner* the Seventh Circuit held that an inmate at a state prison in disciplinary confinement, in order to show conditions of confinement comprising an atypical and a significant hardship in relation to the ordinary incidents of prison life such as to trigger a liberty interest in remaining in the general prison population, must prove. that the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in the state. *See* 128 F.3d at 1175. If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *See id.* The court said,

> Every state must have somewhere in its prison system single-person cells in which prisoners are sometimes confined not because they have misbehaved but simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth. Almost 6 percent of the nation's prison inmates are in segregation, . . . and it appears that the great majority of these are not in disciplinary segregation . . . so even a prisoner who had committed a white-collar crime and had been assigned to the lowest-security prison in the state's system might find himself in segregation for a nondisciplinary reason.

*Id.* at 1176.

The clear import of *Wagner* is that administrative confinement, even under harsh conditions, simply does not implicate a liberty interest, a position the Seventh Circuit reiterated many times both before and after *Wagner*. *See, e.g., Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir.2005) ("[R]eassignment from the general [prison] population to discretionary segregation does not constitute a deprivation of a liberty interest."); *Thomas*, 130 F.3d at 761 ("[D]iscretionary segregation . . . do[es]

not implicate a liberty interest."); *Crowder v. True,* 74 F.3d 812, 815 (7th Cir.1996) (quoting *Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593) (placement in administrative segregation without a hearing, even if it "subjects the prisoner to more burdensome conditions" of confinement, "does not constitute a 'grievous loss' of liberty, ... an atypical and significant hardship on the prisoners generally in relation to the ordinary incidents of prison life, nor a dramatic departure from the basic conditions or duration of the prisoners' sentences."); *Williams,* 71 F.3d at 1248–49 ("A prisoner has no liberty interest in remaining in the general prison population .... In fact, absent a constitutional, statutory, or regulatory bar, ... a prisoner may be transferred for any reason, or for no reason at all[.]"; thus, if an inmate were placed in administrative segregation, as opposed to disciplinary segregation, he "would have no liberty interest" in avoiding such segregation); *Meriwether v. Faulkner,* 821 F.2d 408, 414 (7th Cir.1987) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence .... Given the broad uses of administrative segregation ... inmates should reasonably anticipate being confined in administrative segregation at some point during their incarceration."). In light of the fact that, under *Wagner,* administrative confinement in the most secure prison in a state is merely the baseline for determining whether disciplinary confinement at a state prison implicates a liberty interest, before *Wilkinson* and *Westefer* trial courts in this Circuit generally recognized no liberty interest in avoiding administrative confinement at a supermax prison. *See, e.g., Freeman v. Berge,* No. 04–C–302–C, 2004 WL 1196815, at *5 (W.D.Wis. May 27, 2004) (citing *Wagner,* 128 F.3d at 1176)

(administrative confinement at a supermax prison implicates no liberty interest); *Irby v. Thompson,* No. 03–C–346–C, 2003 WL 23218538, at *4–5 (W.D.Wis. Sept. 2, 2003) (same); *Freeman v. Wisconsin Dep't of Corr.,* No. 02–C–348–C, 2002 WL 32357090, at *3 (W.D.Wis. July 29, 2002) (same); *Rivera v. Berge,* No. 01–C–423–C, 2001 WL 34379468, at *4–5 (W.D.Wis. Oct. 10, 2001) (same); *Garrett v. Berge,* No. 01–C–0523–C, 2001 WL 34371756, at *3–4 (W.D.Wis. Sept. 26, 2001) (same); *Johnson v. O'Donnell, Inmate Complaint Reviewer,* No. 01–C–0257–C, 2001 WL 34372892, at *9 (W.D.Wis. Aug.24, 2001) (same); *Scarver v. Litscher,* No. 00–C–711–C, 2000 WL 34233693, at *8 (W.D.Wis. Dec. 19, 2000) (same).

In *Westefer* the Seventh Circuit recognized this Court's reliance on *Wagner* in dismissing the procedural due process claims of the proposed class of Tamms inmates. *See Westefer,* 422 F.3d at 585. However, the Seventh Circuit observed, "[o]ur colleague in the district court" lacked "the benefit of the Supreme Court's decision in *Wilkinson* [.]" *Id.* at 586. Similarly, the *Westefer* court, in holding that the allegations of the plaintiffs' complaint stated a claim for violations of their procedural due process rights, referred explicitly to "the now-governing standards of *Wilkinson.*" *Id.* at 589. It is plain from the language of *Westefer* that, under pre-*Wilkinson* law in this Circuit, there was no clearly established due process liberty interest in avoiding assignment to a state prison in either disciplinary segregation or administrative segregation, even under the highly restrictive conditions of a supermax prison. *See Tiggs v. Berge,* No. 01–C–171–C, 2001 WL 34377567, at *17 (W.D.Wis. May 29, 2001) (interpreting *Wagner* and other pre-*Wilkinson* Seventh Circuit authority as precluding a due process claim brought by an inmate confined in administrative detention at the Wisconsin super-

max prison in a proposed class action on behalf of inmates at the prison). In fact, in *Wagner* the Seventh Circuit recognized that it was operating in an area of some uncertainty, acknowledging that the result reached under the court's interpretation of *Sandin* was "harsh" and adding that "we would welcome clarification ... by the Court." 128 F.3d at 1176.

This Court sees no reason why IDOC officers and employees should be required to be better interpreters and prognosticators of the law than the federal judges of this Circuit. *See Greenberg*, 840 F.2d at 472 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727) (observing that the principle underlying the doctrine of qualified immunity is that "[i]f the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); *Cygnar v. City of Chicago*, 865 F.2d 827, 843 (7th Cir.1989) ("[W]hether an official may prevail in his qualified immunity defense depends upon the ... objective reasonableness of his conduct as measured by reference to clearly established law."). The Court concludes that Defendants did not violate Plaintiff's clear-

ly established constitutional rights by assigning him to Tamms allegedly without adequate process. In this connection the Court notes that, as Defendants correctly point out, whether the conditions of confinement at Tamms create a liberty interest and, if so, what process is due in order to protect that interest still are not clearly established, because, as discussed, these are precisely the issues the Seventh Circuit has tasked the Court with deciding in resolving the due process claims of the *Westefer* plaintiffs, whose claims, as discussed, have been consolidated with Plaintiff's claims. *See Westefer*, 422 F.3d at 589–90. Therefore, the Court finds that Defendants are shielded by qualified immunity from liability in damages as to Count Three of Plaintiff's amended complaint.[1]

## CONCLUSION

Defendants' motion for dismissal of the request for damages asserted in Count Three of Plaintiff's amended complaint is **GRANTED** (Doc. 101).

**IT IS SO ORDERED.**

---

1. The Court wishes to emphasize that this Order is not intended to resolve the issue of qualified immunity from damages as to the procedural due process claims of the plaintiffs in the *Westefer* case. Although, as discussed, *Westefer* has been brought as a class action, only declaratory and injunctive relief, not damages, are sought as to the class claim in that case, but it appears from the operative complaint in *Westefer* that the named plaintiffs individually seek damages on their due process claims. The Court welcomes full briefing by the parties to *Westefer* concerning the applicability of the qualified immunity doctrine to the named plaintiffs' request for damages on their due process claims. Naturally, the Court expects that the parties to *Westefer*, in briefing the issue of qualified immunity, will address the law-of-the-case effect

of this Order in that case. *See Trustees of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec.*, 223 F.3d 459, 468 n. 4 (7th Cir.2000); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995); *Polys v. National Broad. Co.*, No. 80 C 2475, 1985 WL 17716, at *1 (N.D.Ill. Feb. 4, 1985). Similarly, the Court will expect counsel for the named plaintiffs in *Westefer* to present compelling grounds for the Court to depart from the reasoning set out in this Order. *See Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir.1989) (discussing exceptions to the law-of-the-case doctrine). With that caveat, however, the Court makes no determination at this time as to the issue of qualified immunity in *Westefer*.