**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 22, 2019[*]
Decided April 23, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-3052

| | |
|---|---|
| CHRISTOPHER S. STRECKENBACH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-412 |
| | |
| MICHAEL MEISNER, et al., | Lynn Adelman, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Christopher Streckenbach, a Wisconsin inmate formerly housed at Redgranite Correctional Institution, sued several prison officials for retaliation under the First Amendment when they subjected him to a cell search and otherwise harassed him after he filed a lawsuit against a prison employee. The district court entered summary judgment for the defendants, concluding that Streckenbach did not exhaust his administrative remedies for his claims against several defendants and that he presented

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

insufficient evidence of constitutional violations committed by the remaining defendants. We affirm.

This is Streckenbach's second suit against officers at Redgranite. In 2015 he sued the warden and a sergeant relating to the destruction of his personal property and lost at summary judgment; we affirmed. *Streckenbach v. VanDensen*, 868 F.3d 594 (7th Cir. 2017). Streckenbach traces the beginning of his difficulties with several officers to this 2015 suit.

Because Streckenbach did not respond to the defendants' motion for summary judgment in the manner required by the local rules, the district court adopted the defendants' proposed findings of fact, and we do the same. E.D. WIS. CIV. L.R. 56(b)(4); *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 992 (7th Cir. 2002). As mentioned, Streckenbach believes that the 2015 lawsuit led to the retaliatory acts that are the subject of this suit. He describes a subsequent mailroom encounter when he allegedly was mocked by Officers Scott Kosminskas and Michael Crump (Kosminskas supposedly told Streckenbach that he heard Streckenbach was suing him and he wanted to know whether he needed to hire a good defense attorney). And two years later Kosminskas and Crump—still rankled by the 2015 lawsuit, according to Streckenbach—threatened to send him to solitary confinement after he refused to be strip-searched. Streckenbach filed a grievance over the strip-search incident against both officers, but the grievance was dismissed. Streckenbach did not appeal the dismissal.

Streckenbach had run-ins with other officers as well. While the 2015 suit was pending, Officer Greg Radtke conducted a routine, monthly cell search and, according to Streckenbach, turned his room upside down. Around this same time, Sergeant Jon LaFontaine said that it was a joke for Streckenbach to think he would prevail in his lawsuit, summoned him over the loudspeaker with an announcement that "attorney Streckenbach" should go to the sergeant's desk, rubber-stamped "LEGAL MAIL OPEN IN PRESENCE OF INMATE" on his correspondence more times than necessary, and threatened to send him to solitary confinement for no reason. According to Streckenbach, Officer Eric Podoski—for no reason—also threatened to send him to solitary confinement, kicked his cell door on occasion, and once called him "RGCI's biggest jailhouse snitch" in front of other inmates.

Believing that all these attacks were retaliation for his 2015 suit, Streckenbach filed multiple grievances complaining as much, and he formally asked several times to be separated from these officers. These complaints were reviewed by Security Director

David Tarr and Unit Supervisor Joli Grenier, who either denied the grievances or left them unresolved by the time Streckenbach filed this suit. Streckenbach in turn filed a grievance against Officer Grenier, complaining that she had taken too long to address his grievances. This grievance was dismissed, and he did not appeal it.

Streckenbach also says that he sought help from certain prison officials to intervene and curb the abuse, but no one stepped up. Among those officials whom he named were prison Warden Michael Meisner, Deputy Warden Sandra Hautamaki, Administrative Captain Andrew Wesner, Captain Chad Keller, Psychologist Supervisor Nikolaus Werner, and Institution Complaint Examiner Michelle Smith.

Streckenbach then filed this suit, bringing First Amendment retaliation claims against five defendants (LaFontaine, Podoski, Crump, Kosminskas, and Radtke) and failure-to-intervene claims against eight others (Meisner, Hautamaki, Tarr, Wesner, Grenier, Keller, Werner, and Smith).

The judge entered summary judgment for all defendants. He determined that Streckenbach did not exhaust his administrative remedies regarding claims against six defendants (Meisner, Hautamaki, Wesner, Keller, Werner, and Smith—whose conduct he never challenged in an inmate complaint), as well as Crump and Kosminskas (he did not appeal the dismissal of his complaint over the strip-search incident, nor had he received a decision on one then-pending separation request against them). As for LaFontaine, Podoski, and Radtke, the judge ruled that no jury could conclude that their allegedly retaliatory acts were serious enough to deter a reasonable person from engaging in future First Amendment activity. Lastly, regarding Streckenbach's claim that Tarr failed to intervene to stop the defendants' retaliatory behavior, the judge determined that their behavior was not unconstitutional, so there was no reason for Tarr to do anything about it.[1]

On appeal Streckenbach maintains generally that he fully exhausted his administrative remedies for all his claims. But the exhaustion requirement is strict, requiring a prisoner to complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). As the district court properly determined, Streckenbach failed to exhaust his remedies against Meisner,

---

[1] The judge's order puzzlingly omitted any analysis of Streckenbach's claim against Unit Supervisor Joli Grenier.

Hautamaki, Wesner, Keller, Werner, and Smith because he did not file any inmate complaints against them challenging their failure to intervene on his behalf. WIS. ADMIN. CODE DOC § 310.01(2)(a). He also failed to exhaust his remedies against Crump, Kosminskas, and Grenier because he did not appeal the dismissals of his complaints against them. *Id.* §§ 310.05, 310.09.

As for Streckenbach's First Amendment retaliation claims (which he did exhaust) against Podoski, Radtke, and LaFontaine, he generally challenges the entry of summary judgment on grounds that the judge downplayed the seriousness of the alleged misconduct. But to survive summary judgment, he needed to provide enough evidence to allow a reasonable jury to conclude that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity at least partially motivated the deprivation suffered. *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017).

The judge concluded that Streckenbach's claim against Podoski faltered on the second prong—that a reasonable jury could not find that Podoski's behavior was likely to deter future protected activity. But Streckenbach could point to evidence that Podoski called him a snitch in front of other inmates, and the First Amendment prohibits conduct that would likely deter a person of "ordinary firmness" from continuing to engage in protected activity. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). It is "common knowledge that snitches face unique risks in prison," *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008), and we think that a reasonable juror could infer that being labeled a snitch would likely deter a person of "ordinary firmness" from exercising his First Amendment rights. As for Podoski's other conduct—threatening to send him to solitary confinement for no reason and occasionally kicking his cell door—a reasonable jury could conclude that those actions, too, could deter protected conduct. The adverse actions "need not be extreme," *Massey v. Johnson*, 457 F.3d 711, 720 (7th Cir. 2006), nor need they independently violate the constitution, *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009); *Hoskins v. Lenear*, 395 F.3d 372 (7th Cir. 2005). And we have explicitly said before that kicking a cell door could, if done with a retaliatory motive, be actionable. *Bridges*, 557 F.3d at 541.

The judge, however, appropriately concluded that even if Streckenbach satisfied the second prong, summary judgment was still proper under the third prong because there was no record evidence of a retaliatory motive. Streckenbach cannot point to any evidence suggesting that Podoski was even aware of the 2015 lawsuit at the time of any of this conduct, let alone that he was motivated by it. (Podoski in fact says that he did

not learn of the lawsuit until December 12, 2016, when Chad Keller, his supervising officer, discussed Streckenbach's complaints with him.) Streckenbach speculates that Podoski must have learned about his lawsuit because the prison is a small place and word gets around, but neither speculation nor suspicious timing—without more—is enough to survive summary judgment. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Summary judgment was properly entered for LaFontaine, as well. The judge was correct that Streckenbach could not satisfy the second prong of the prima facie case. No rational jury could conclude that much of LaFontaine's conduct—poking fun at the amount of money Streckenbach sought in damages, mocking him for thinking he could prevail in his lawsuit, summoning him to the sergeant's desk over the loudspeaker with references to "attorney Streckenbach," or excessively rubber-stamping "LEGAL MAIL" on correspondence addressed to Streckenbach—would deter a person of "ordinary firmness" from future protected activity. True, we have noted that a "campaign of petty harassments" that included reprimands and ridicule could be enough to deter free expression, *see, e.g.*, *Massey*, 457 F.3d at 720–21, but we believe on this record that the judge accurately assessed the situation.

Streckenbach also complained that LaFontaine threatened to send him to solitary confinement—a threat that, as we already have said, could deter a person of ordinary firmness from exercising future speech. But this does not justify reversal because Streckenbach cannot satisfy the third prong of the prima facie test. The record here (effectively the defendants' uncontested version of the facts) permits no inference to allow a jury to find that any such threat was motivated by the 2015 suit.

The judge also correctly concluded that Streckenbach's claim against Radtke faltered on the second prong of the prima facie test. No reasonable jury could conclude that Radtke's monthly search of his cell would deter a person of ordinary firmness from exercising future speech. Not only was the cell search Streckenbach complains of routine, but there is no evidence that the search was conducted improperly.

Lastly, Streckenbach's claim against Tarr—that he failed to intervene to prevent violations of Streckenbach's First Amendment rights—also fails. The judge was correct that to prevail, Streckenbach would need to show that Tarr had knowledge of those violations, *see Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017), and Streckenbach did not provide evidence that any occurred at all.

AFFIRMED